No. 84,278

STATE OF KANSAS, *Appellee*, v. JAMES A. PENN, JR., *Appellant.*

(23 P.3d 889)

Opinion filed June 1, 2001.

*Kevin Loeffler*, of Wichita, argued the cause and was on the brief for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Elizabeth Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: James A. Penn, Jr., appeals from his jury convictions of one count of felony murder, two counts of attempted aggravated robbery, one count of aggravated assault, and one count of criminal possession of a firearm. He was sentenced to life imprisonment plus 192 months.

Patrick Schoenhofer (Pat) died from a gunshot wound to his head. The shot had been fired at close range. The autopsy also revealed a grazing gunshot wound on the victim's right hand. The wounds were consistent with ones that could have been sustained by someone struggling with an assailant for possession of a handgun.

The shooting occurred at approximately 8:30 the evening of February 26, 1999. Immediately before the shooting, Pat and his wife, Erika, were visiting with his sister and brother-in-law, Ann and Angelo Baldonado, in the Baldonado's apartment. Pat and Angelo left the apartment with the intention of going to the store for medicine for Ann.

As Pat and Angelo rounded the corner of the apartment building, they encountered a man standing partially in a shadow. Angelo testified that the man was approximately 30-35 years of age, had

very dark skin and a mustache, was "probably six foot," and weighed "about 230, 250 pounds." He was wearing two caps—a ski cap and a ball cap. The ski cap was dark blue or black. He was holding a paper bag and pointing a semiautomatic gun at them. He said to Pat and Angelo, "Give up your shit."

Pat, who was 23, and Angelo, who was several years younger, lunged at the man with the gun. Angelo heard a gunshot and saw Pat fall to the ground. Angelo went down on one knee and leaned over Pat. The gunman pointed the gun at Angelo's head for a moment, then turned and ran down the stairs. Angelo followed him to the next lower level, but immediately ran back upstairs to where Pat was.

Defendant lived in the apartment complex where the shooting occurred. Robert Fleming, whose apartment was directly across from defendant's, stepped outside his apartment when he heard the gunshot. He saw nothing unusual and was going back into his apartment when he heard a woman or women screaming. As Fleming turned around, he noticed the door of defendant's apartment closing. Fleming saw that defendant's automobile was in the parking lot. When police arrived, Fleming reported that the screaming and defendant's door closing coincided. When police knocked on defendant's apartment door, he was not there and his car was gone from the parking lot.

During the afternoon of February 26, Tolisha Jackson, a woman with whom defendant had an intimate relationship, talked with him on the telephone. He told her they would do something special that night. At approximately 7 or 7:30 in the evening, Jackson and Penn had another telephone conversation. Defendant told her he was trying to borrow some money. Jackson asked defendant if he would give her a ride to the store. Defendant did not arrive to pick her up until 8:30 or 9 p.m. Jackson was angry that he had not come when he said he would. Defendant told her he had not been successful in borrowing money. He took her to a convenience store for cigarettes and then to a club, where she left him and went inside.

When defendant returned to the apartment complex approximately 30 to 45 minutes after police arrived, he told them that he

had heard a gunshot or two when he was in the parking lot next to the Dumpster. Concerned for his safety, he returned immediately to his apartment. Another resident of the apartment complex, who was outside near the Dumpster smoking a cigarette when he heard gunfire, did not see defendant in the vicinity of the Dumpster.

On a closet shelf in defendant's apartment, police found three 9 millimeter bullets and a brown paper sack that contained a box of bullets. Defendant told police that his wife had taken a gun and ammunition away from her son. Defendant did not know what happened to the gun, although he conjectured that his wife had given it to a family member. According to defendant's wife, the ammunition belonged to her husband.

A forensics examiner testified that the three loose bullets had been extracted from the same gun that fired the spent cartridge case that was found near the victim's body. A latent prints examiner for the Wichita Police Department testified that fingerprints on the brown paper sack matched the defendant's.

The sole issue on appeal is whether Penn's convictions were supported by sufficient evidence. When the sufficiency of the evidence is challenged, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mincey*, 265 Kan. 257, 268, 963 P.2d 403 (1998).

Defendant contends that the State failed to prove that he had the specific intent to commit a robbery. It is his position that evidence that he said "Give up your shit" is not sufficient to satisfy the intent element of the attempted robbery charges. He has offered no reason, however, why the crude phrase does not communicate the intent to rob the victims. In this case, defendant lurked in a shadow and accosted the victims, pointing a gun at them and uttering the phrase "Give up your shit." There is no question that a rational factfinder could have found beyond a reasonable doubt that defendant intended to rob his victims.

Defendant also contends that the State failed to establish that he was the perpetrator. He argues that there is no direct evidence of his attempting to rob the victims and shooting Pat Schoenhofer.

There is, however, ample circumstantial evidence from which a rational factfinder could find defendant guilty beyond a reasonable doubt. Ammunition found in defendant's closet had been discharged from the murder weapon, and his claim that the bullets belonged to someone else was refuted. Defendant's claim that he was near the Dumpster when he heard gunfire was refuted. His telling Jackson earlier in the day that he would borrow money so that they could do something special establishes a motive for the robbery. His delay in arriving to pick up Jackson fits with the time of the murder. His arriving without money fits with the failed robbery attempt. It has long been established that a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Clemons*, 251 Kan. 473, 488, 836 P.2d 1147 (1992). There is no merit to defendant's argument.

Affirmed.