No. 88,139

STATE OF KANSAS, *Appellee*, v. BRIAN KEITH MCADAM, *Appellant*.

(83 P.3d 161)

Opinion filed January 30, 2004.

*Randall L. Hodgkinson,* deputy appellate defender, argued the cause, and *Kristen L. Chowning,* assistant appellate defender, was with him on the briefs for appellant.

*Frederick B. Campbell,* county attorney, argued the cause, and *Carla J. Stovall,* former attorney general, and *Phill Kline,* attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Brian Keith McAdam was convicted by a jury of conspiracy to unlawfully manufacture methamphetamine, attempted theft, attempt to unlawfully possess anhydrous ammonia, and conspiracy to unlawfully possess anhydrous ammonia. He was

sentenced to 173 months in prison. The Court of Appeals affirmed the convictions of conspiracy to unlawfully manufacture methamphetamine and attempted theft, reversed the convictions of attempt to unlawfully possess anhydrous ammonia and conspiracy to unlawfully possess anhydrous ammonia, remanded for resentencing in accordance with reversal of those convictions, and affirmed the drug severity level 1 felony penalty for conspiracy to unlawfully manufacture methamphetamine. *State v. McAdam*, 31 Kan. App. 2d 436, 66 P.3d 252 (2003). This court granted McAdam's petition for review and denied the State's cross-petition for review. Therefore, our review is limited to the issues of determining the sufficiency of the evidence to support McAdam's convictions of conspiracy to unlawfully manufacture methamphetamine and attempted theft and whether McAdam was illegally sentenced for conspiracy to unlawfully manufacture methamphetamine.

McAdam was staying at the home of his friend, Marcus Maley, who lived with his girlfriend. Maley and McAdam agreed to manufacture methamphetamine. When they had made methamphetamine before, Maley had helped McAdam by doing tasks like removing ephedrine pills from blister packaging and poking holes in cans of ether.

On this occasion, they had everything they needed to make methamphetamine except anhydrous ammonia. Before Maley and McAdam left Maley's residence to steal anhydrous ammonia from the Kincaid Co-op, they were joined by Casey Carter. Also before leaving Maley's house, they placed the materials that they were going to use for manufacturing methamphetamine into the trunk of Maley's girlfriend's vehicle because Maley would not allow the manufacturing to be done where he lived. They were going to use his girlfriend's vehicle rather than Maley's because his was well known in the area.

At approximately 9:30 or 10 p.m., Maley, McAdam, and Carter drove to the Kincaid Co-op to get anhydrous ammonia. Maley drove his vehicle, Carter sat in the front passenger seat, and McAdam sat in the back. Maley and McAdam brought along two water jugs to carry the anhydrous ammonia and a large cooler. They also had a couple of scanners, some night vision goggles, and wal-

kie-talkies. According to Maley, McAdam had no particular responsibility during the trip, but Maley testified that the three were working together and he went to the Co-op because that was part of the agreed-on plan. When they arrived at the Kincaid Co-op, Carter got out of the vehicle to steal the anhydrous ammonia.

Deputy Max Skelton was at the Kincaid Co-op checking on the anhydrous ammonia tanks when he smelled anhydrous ammonia and saw a man running away from the tanks toward the trees. As Skelton was driving to the road to cut the man off, he saw a vehicle's headlights come on. The vehicle was driven slowly toward the deputy, who turned around and stopped it. Maley was driving the vehicle, and McAdam was in the back seat.

A second officer, Undersheriff Darin Dalsing, got consent from Maley to search the vehicle. In the trunk, there was an ice chest containing a single water jug that smelled of anhydrous ammonia and a margarine container with an orange powder residue. It smelled of ether and later tested positive for methamphetamine. There were scanners, a list of scanner frequencies, a walkie-talkie, and night vision goggles in the passenger compartment.

In an effort to stay out of jail, Maley told Dalsing that he could give him McAdam's methamphetamine lab. Maley gave the officers consent to search his residence and his girlfriend's vehicle. In the trunk of her vehicle, the officers found a shotgun, starting fluid, coffee filters, a face mask, lithium batteries, rock salt, drain opener, a weed sprayer, propane bottles, a heater, a 2-liter bottle full of ether, a digital scale, rubber gloves, and 10 bottles of ephedrine tablets. A few days later, a Kincaid Co-op employee found two water jugs, one of which was half full of anhydrous ammonia, in some trees in the vicinity of the anhydrous ammonia tanks.

We first determine if there was sufficient evidence from which a rational factfinder could find McAdam guilty of conspiracy to commit manufacture of methamphetamine.

K.S.A. 21-3302(a) provides:

"A conspiracy is an agreement with another person to commit a crime or to assist in committing a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by such person or by a co-conspirator."

In this case, the jury was instructed that the following claims had to be proved in order to establish the charge of conspiracy to commit unlawful manufacture of methamphetamine: (1) McAdam agreed with another person to manufacture methamphetamine, (2) he did so with the intent to manufacture methamphetamine, and (3) McAdam "or any party to the agreement acted in furtherance of the agreement by attempting to steal anhydrous ammonia."

McAdam contends that it was not shown that McAdam or another party to the agreement committed an overt act in furtherance of the agreement to manufacture methamphetamine. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003).

The Court of Appeals disregarded the cases relied on by McAdam for the proposition that the overt act must extend beyond mere preparation, *State v. Chism*, 243 Kan. 484, 759 P.2d 105 (1988), and *State v. Garner*, 237 Kan. 227, 699 P.2d 468 (1985), because they involved overt acts for the crime of attempt rather than conspiracy. 31 Kan. App. 2d at 441. The Court of Appeals cited *State v. Hill*, 252 Kan. 637, 642, 847 P.2d 1267 (1993), in which the court quoted the following definition of overt act from Black's Law Dictionary 1104 (6th ed. 1990):

"An open, manifest act from which criminality may be implied. An outward act done in pursuance and manifestation of an intent or design. An open act, which must be manifestly proved.

. . . .

"An overt act which completes crime of conspiracy to violate federal law is something apart from conspiracy and is an act to effect the object of the conspiracy, and need be neither a criminal act, nor crime that is object of conspiracy, but must accompany or follow agreement and must be done in furtherance of object of agreement. [Citation omitted.]"

See 31 Kan. App. 2d at 441. The Court of Appeals' discussion of this issue continued:

"Here, there was sufficient evidence that the act of attempting to steal anhydrous ammonia was done in furtherance of the parties' agreement and plan to commit the unlawful manufacture of methamphetamine. Evidence existed that McAdam and Maley had agreed to manufacture methamphetamine. All they lacked was anhydrous ammonia. Thus, the act to acquire the anhydrous ammonia was in furtherance of their agreement. Because the State did not have to demonstrate that this act extended beyond mere preparation, McAdam's argument fails." 31 Kan. App. 2d at 442.

McAdam also argues that there was insufficient evidence to show that Carter, who stole the anhydrous ammonia, was a party to the agreement to manufacture methamphetamine. In this regard, the Court of Appeals stated:

"The jury drew a reasonable conclusion that because Carter had joined Maley and McAdam in their quest to obtain anhydrous ammonia, he had agreed to help them manufacture methamphetamine. Because Maley drove Carter to the Kincaid Co-op and because McAdam was checking scanner frequencies in the backseat of Maley's vehicle, it was reasonable for the jury to conclude that Carter was a coconspirator. A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Penn*, 271 Kan. 561, 564, 23 P.3d 889 (2001). Thus, there was sufficient evidence to support the inference that Carter had agreed to the conspiracy." 31 Kan. App. 2d at 441.

McAdam has added nothing to his arguments on this issue in this court, and we agree with the Court of Appeals.

We next consider whether there was sufficient evidence from which a rational factfinder could find McAdam guilty of attempted theft.

McAdam contends in his petition for review that there was no overt act to support his conviction of attempted theft of anhydrous ammonia. On this issue the Court of Appeals stated the following:

"McAdam argues that the evidence shows only that he was riding along in Maley's car on the night of the incident. However, Maley's testimony at trial went further than that. McAdam told Maley that anhydrous ammonia was the only ingredient they were lacking to produce methamphetamine. McAdam was part of the discussion regarding who was going to get the anhydrous ammonia and how they would do it. McAdam had one two-way radio in the back seat with him, and Carter had the other. As a result, sufficient evidence existed that McAdam had performed an overt act in furtherance of his attempt to take anhydrous ammonia from the Kincaid Co-op and possess it in an unapproved container." 31 Kan. App. 2d at 442.

It is McAdam's position that Carter was the only one to commit any overt act toward the theft of anhydrous ammonia. He further contends that there is no evidence that he intentionally aided, abetted, advised, or counseled Carter to commit the crime. He cites *State v. Scott*, 250 Kan. 350, 362, 827 P.2d 733 (1992), for the proposition that mere association with persons who commit a crime or mere presence in the vicinity of a crime does not provide a sufficient basis to establish guilt of aiding and abetting. In *Scott*, the court also stated that " ' "when a person knowingly associates himself with the unlawful venture and participates in a way which indicates he willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury." ' [Citations omitted.]" 250 Kan. at 362. In this case, the manufacture of methamphetamine was the objective. McAdam had the necessary equipment and ingredients except anhydrous ammonia to make methamphetamine. McAdam was the person who was going to make methamphetamine, he knowingly associated himself with Maley and Carter in order to obtain the anhydrous ammonia that was necessary to make methamphetamine, and he went with Maley and Carter to the Kincaid Co-op for the purpose of stealing anhydrous ammonia.

The Court of Appeals stated that his overt act was having a walkie-talkie in the back seat with him while Carter had the other, the implication being that McAdam could communicate with Carter to further the success of the theft. The evidence supporting the Court of Appeals was Maley's testimony that they took two walkie-talkies with them to the Co-op and that Carter had one of them. When the officers searched Maley's vehicle, one walkie-talkie was found in the back seat, where McAdam had been sitting. From this evidence and evidence of the circumstances, the jury reasonably could find that McAdam knowingly associated himself with the theft of anhydrous ammonia and participated in a way that indicated his intentional furthering of the theft. We find no merit in McAdam's argument and affirm his convictions.

McAdam also argues that he was illegally sentenced for conspiracy to unlawfully manufacture methamphetamine when he was sentenced for violation of K.S.A. 65-4159(a), a drug severity level

1 felony, rather than for violation of K.S.A. 65-4161(a), a drug severity level 3 felony.

A conspiracy is an agreement with another person to commit a crime. K.S.A. 21-3302(a). The crime that McAdam was charged, convicted, and sentenced of conspiring to commit was the unlawful manufacture of methamphetamine. See K.S.A. 65-4159(a). He argued in the Court of Appeals that he was illegally sentenced under K.S.A. 65-4159(a) and that he should have been sentenced under K.S.A. 65-4161(a). He did not raise the issue of his sentence in the trial court. The Court of Appeals considered the issue pursuant to K.S.A. 22-3504(1), which allows the appellate court to correct an illegal sentence. 31 Kan. App. 2d at 445. This court has said that a sentence that does not conform to the statutory provision is an illegal sentence. *State v. Johnson,* 269 Kan. 594, 600, 7 P.3d 294 (2000). Upon granting McAdam's petition for review, this court reviews the decision of the Court of Appeals. See Rule 8.03(g)(1) (2003 Kan. Ct. R. Annot. 58).

K.S.A. 65-4159(a) provides: "Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture any controlled substance or controlled substance analog." Methamphetamine is a controlled substance. K.S.A. 65-4101(e); K.S.A. 65-4107(d)(3). The penalty for violation of 65-4159(a) is a drug severity level 1 felony. K.S.A. 65-4159(b).

K.S.A. 65-4161(a) provides:

"Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with intent to sell, deliver or distribute; prescribe; administer; deliver; distribute; dispense or compound any opiates, opium or narcotic drugs, or any stimulant designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107 and amendments thereto. Except as provided in subsections (b), (c) and (d), any person who violates this subsection shall be guilty of a drug severity level 3 felony."

Methamphetamine is a stimulant designated in 65-4107(d)(3).

The Court of Appeals stated that 65-4159(a) and 65-4161(a) "address the same offense, the compounding of methamphetamine." 31 Kan. App. 2d at 446. The Court of Appeals continued:

"Although K.S.A. 65-4159(a) and K.S.A. 65-4161(a) contain identical elements as applied to this case, K.S.A. 65-4161(g) states: 'The provisions of this section shall

be part of *and supplemental to the uniform controlled substances act.*' (Emphasis added.) Thus, it seems that K.S.A. 65-4161 was intended to fill the gaps in the Uniform Controlled Substances Act.

"'General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling. [Citation omitted.]' *In re Estate of Antonopoulos*, 268 Kan. 178, 189, 993 P.2d 637 (1999). Furthermore, although criminal statutes should be interpreted in favor of the accused, 'judicial interpretation must be reasonable and sensible to effect legislative design and intent. [Citation omitted.]' *State v. McGill*, 271 Kan. 150, 154, 22 P.3d 597 (2001). The language in K.S.A. 65-4161(g) indicates it was the legislature's intent to make K.S.A. 65-4151 a general statute, which only applies when no other statute will.

"K.S.A. 65-4159 clearly applies to the unlawful manufacture of methamphetamine. Because there is no conflict between K.S.A. 65-4159(a) and K.S.A. 65-4161(a), the trial court appropriately sentenced McAdam under the special statute, K.S.A. 65-4159. See *State v. Luttig*, 30 Kan. App. 2d 1125, 54 P.3d 974, *rev. denied* 275 Kan. 967 (2002) (holding defendant was properly sentenced under special statute that conflicted with general statute). Thus, McAdam's argument fails." 31 Kan. App. 2d at 446-47.

The State contends that the Court of Appeals reached the right decision for the wrong reason. According to the State, 65-4161(a) and 65-4159(a) are not identical and K.S.A. 65-4161(a) does not apply to McAdam's conduct. The State's position is that methamphetamine is not made by compounding, which is the conduct prohibited by K.S.A. 65-4161(a), but rather is made by a chemical synthesis called reduction. The State seems to expect the court to take it on faith that methamphetamine is not made by compounding and, because not made by compounding, it is made by manufacturing within the meaning of K.S.A. 65-4159(a). The State provides molecular diagrams and descriptions but nothing that would assist a layperson in distinguishing between compounding and manufacturing.

The State has not provided the court with enough information to evaluate the merits of the scientific argument on distinguishing compounding from manufacturing, and the State's common-sense and legal arguments are less than convincing. Moreover, the State fails even to mention the intent of the legislature, which is the critical issue, in wording 65-4159(a) and 65-4161(a) as it did. The

interpretation of a statute is a question of law, and this court's review is unlimited. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). At oral argument the State conceded that if compounding is synonymous with manufacturing then the State loses the argument. The statutory definition of "manufacture" is:

" 'Manufacture' means the production, preparation, propagation, *compounding*, conversion or processing of a controlled substance either directly or indirectly or by extraction from substances of natural origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis and includes any packaging or repackaging of the substance or labeling or relabeling of its container . . . ." (Emphasis added.) K.S.A. 65-4101(n).

Based on compounding's being included in the definition of manufacture, the State would have the court conclude that compounding is a type of manufacturing, as apple is a type of fruit, and that compounding is a more specific term than manufacturing. If the statutory definition is to be interpreted so that compounding is a particular subdivision of manufacturing rather than a synonym of manufacturing, then it seems that production, preparation, propagation, conversion, and processing also ought to be particular types of manufacturing rather than synonyms. It is not apparent that they are, and, in fact, "production" is defined as including the manufacture of a controlled substance. K.S.A. 65-4101(w). By definition compounding is manufacturing, and the State loses this argument.

The State also condemns the Court of Appeals' decision in *State v. Frazier*, 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002), as a misapplication of *State v. Nunn*, 244 Kan. 207, 229, 768 P.2d 268 (1989), which held that "[w]here two criminal offenses have identical elements but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime may be sentenced only under the lesser penalty provision." In *Frazier*, the Court of Appeals concluded that possession of ephedrine or pseudoephedrine under K.S.A. 2001 Supp. 65-7006(a) and possession of drug paraphernalia under K.S.A. 2001 Supp. 65-4152(a)(3) are identical offenses so that only the lesser penalty could be imposed on Frazier. 30 Kan. App. 2d at 405-06. In the present case, the Court of Appeals distinguished *Frazier* as

not involving a statute that was part of and supplemental to the
Uniform Controlled Substances Act. 31 Kan. App. 2d at 446. Based
on its perception that 65-4161 was a gap filler, the conclusion
drawn by the Court of Appeals was that the statute was a general
statute, "which only applies when no other statute will." 31 Kan.
App. 2d at 447. The Court of Appeals further reasoned that K.S.A.
65-4159(a) "clearly applies to the unlawful manufacture of meth-
amphetamine" and therefore concluded that McAdam was appro-
priately sentenced "under the special statute, K.S.A. 65-4159." 31
Kan. App. 2d at 447.

Under the particular facts of this case, we agree with McAdam's
contention that 65-4161(a) and 65-4159(a) are identical and thus
he can be sentenced only under the lesser penalty provision of 65-
4161(a). See *Nunn*, 244 Kan. at 229.

The key difference between McAdam's position and the reason-
ing of the Court of Appeals is that the Court of Appeals treated
the analysis applicable to identical statutes as if it could be com-
bined with the analysis applicable to general and specific statutes.
McAdam, on the other hand, treats the two concepts as separate
and separately analyzed. The Court of Appeals characterized
K.S.A. 65-4159(a) and K.S.A. 65-4161(a) as identical and then ap-
plied the general and specific analysis to them. By doing so, the
Court of Appeals created a hierarchy with the general and specific
analysis trumping the analysis for identical provisions.

In *Nunn*, the court considered two criminal offenses with iden-
tical essential elements but different penalties. The defendant con-
tended that the trial court erred in not instructing the jury on the
offense with the lesser penalty as a lesser included offense. The
court rejected defendant's contention and quoted from *State v.
Clements*, 241 Kan. 77, 734 P.2d 1096 (1987), where the same
argument already had been turned down:

" 'Where identical offenses are involved, the question is not truly a matter of one
being a lesser included offense of the other. Each has identical elements and the
decision as to which penalty to seek cannot be a matter of prosecutorial whimsy
in charging. As to identical offenses, a defendant can only be sentenced under the
lesser penalty. Here, it would have been the better practice to have instructed on
indecent liberties with a child, but the error could have been remedied by sen-

tencing defendant as having been convicted of a class C felony rather than a class B felony. Accordingly, the sentence imposed herein must be vacated.' 241 Kan. at 83." 244 Kan. at 229.

The governing principle, as stated by the court in *Nunn*, is: "Where two criminal offenses have identical elements but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime may be sentenced only under the lesser penalty provision." 244 Kan. at 229.

In *State v. Williams*, 250 Kan. 730, 829 P.2d 892 (1992), the court considered two criminal offenses that, although dealing with the same subject, did not have identical essential elements. Williams was charged with one count of indecent liberties with a child, K.S.A. 1991 Supp. 21-3503, for the alleged sexual molestation of his step-granddaughter. The court concluded that he should have been charged with the more specific offense of aggravated incest, K.S.A. 21-3603, which had the additional essential element of kinship. The governing principle, as stated by the court in *Williams*, is: "When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling." 250 Kan. 730, Syl. ¶ 3.

The statutory provisions either have identical elements or they do not, and the analysis for statutes with identical elements differs from the analysis applicable where statutes do not have identical elements. Thus, if K.S.A. 65-4159(a) and K.S.A. 65-4161(a) have identical elements, the proper analysis is that set out in *Nunn*. As we have seen, the elements of K.S.A. 65-4159(a) and K.S.A. 65-4161(a) are identical, as the Court of Appeals noted, "as applied to this case." 31 Kan. App. 2d at 446. For example, in other circumstances, the essential elements of a violation of K.S.A. 65-4161(a) could be that the defendant sold opium. For this reason, a decision that McAdam's conduct was prohibited by K.S.A. 65-4161(a) as well as by K.S.A. 65-4159(a) so that he may be sentenced only under the lesser penalty provision of K.S.A. 65-4161(a) is limited to the facts of this case. We, therefore, vacate McAdam's sentence for violation of K.S.A. 65-4159(a) and remand to the district

court for resentencing McAdam to a drug severity level 3 felony as provided for a violation of K.S.A. 65-4161(a).

Judgment of the Court of Appeals affirming the district court on the limited issues subject to our grant of review is affirmed in part and reversed in part. Judgment of the district court on these issues is affirmed in part, the sentence is vacated, and the case is remanded with directions.

BEIER, J., not participating.

LARSON, S.J., assigned.