NOT DESIGNATED FOR PUBLICATION

IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,959

STATE OF KANSAS,
*Appellee*,

v.

TERRANCE ISAIAH SIMS,
*Appellant*.


Review of the judgment of the Court of Appeals in an unpublished opinion filed May 5, 2017. Appeal from Wyandotte District Court; BILL L. KLAPPER, judge. Opinion filed March 8, 2019. Remanded with directions. Court retains jurisdiction.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause, and *Kimberly Streit Vogelsberg*, of the same office, was on the brief for appellant.

*Christopher L. Schneider*, assistant district attorney, argued the cause, and *Jerome A. Gorman,* district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by


LUCKERT, J.: Terrance Isaiah Sims was convicted of aggravated criminal sodomy and two counts of rape. As a result of those convictions, the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq., requires him to pay a fee and register every three months for the remainder of his lifetime. Failing to pay the fee can result in a conviction for a misdemeanor on the first offense and for a felony on later offenses. Even though Sims registered at the appropriate times, he did not pay the registration fee for three consecutive registration periods and these failures resulted in one misdemeanor and two felony convictions.

1

Before the district court and on appeal before the Court of Appeals, Sims, who was indigent and unable to afford the fees, raised several constitutional challenges to his convictions, which both courts rejected. In asking us to reverse those decisions, Sims seeks to expand his arguments to include a new argument supporting his general theory that KORA's fee requirement is unconstitutional. This new argument builds on a decision of the Court of Appeals issued after this court accepted review in Sims' appeal. Under the unique circumstances of this case, we determine Sims should be allowed to make the new argument. We conclude, however, a remand to the district court is necessary. We retain appellate jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, January 2014, and April 2014, Sims completed KORA reporting forms at the Wyandotte County Sheriff's Office, but he did not pay the $20 registration fee at the time of registration or within 15 days. Each time, he signed a form entitled "NOTICE OF FAILURE TO PAY OFFENDER REGISTRATION FEE." The notice stated:

> "The Act requires that every person required to register shall remit a payment to the sheriff in the amount of $20.00 on each occasion when the person reports to the sheriff's office in the county in which the person resides or is otherwise located. The only exception to this is if you have a court order, signed by a judge, granting you indigence."

The notice also advised that Sims "could be charged with a misdemeanor, or potentially a felony, for failure to pay the fee." The notice then provided language from K.S.A. 2013 Supp. 22-4903(c)(3), which states a violation of KORA occurs if an offender fails to pay the registration fee within 15 days.

After Sims had signed three forms acknowledging his failure to pay, the State charged him with three counts of violating K.S.A. 2013 Supp. 22-4905(k) (now codified at K.S.A. 2018 Supp. 22-4905[l]) and K.S.A. 2013 Supp. 22-4903(c)(3). The first failure was a misdemeanor and the two others were felonies.

In the Wyandotte County District Court, Sims moved to suppress the notices, arguing they were involuntary and the Wyandotte Sheriff's Office did not give him the required warnings for a custodial interrogation under *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). He also moved to dismiss the charges because his only reason for failing to pay the fee was his indigency. He argued that imposing criminal penalties for nonpayment would be unconstitutional as applied to him because it would discriminate against him based on wealth in violation of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Sims acknowledged K.S.A. 2013 Supp. 22-4905(k) provided an exception from the registration fee if a court made a finding of indigency within three years before the registration date. But he argued the exception did not make the statute constitutional because an indigent offender could not afford to hire an attorney and would not be entitled to court-appointed counsel to pursue an indigency declaration. The district court denied his motion to suppress and motion to dismiss.

The trial proceeded on stipulated facts, which among other things stated Sims was subject to KORA; he had registered on October 13, 2013, January 21, 2014, and April 16, 2014; he had failed to pay the $20 registration fee within 15 days of each of those registrations; no court had found him to be indigent during the three years before October 13, 2013, or any time since; his failure to pay did not result from intentional, willful, reckless, or negligent acts; and he would present sufficient evidence to show that his failure to pay the registration fees was because of his inability to afford the fee based on the totality of his financial circumstances. Another stipulated fact provided:

3

"That [Sims] was unable to hire an attorney as a result of his financial circumstances, nor was he eligible to obtain a court appointed attorney, to assist him in filing a motion requesting that a judge declare him indigent for the purpose of exempting him from payment of the registration fee imposed pursuant to K.S.A. 22-4905(k)."

The district court acknowledged the import of this stipulation, pointing out:

"I'm not discounting the arguments you made that Mr. Sims is poor, he's probably not going to be able to get an attorney and [have] an attorney then bring him in front of a judge in order to have a judge declare that he is indigent. Perhaps that is a procedural problem with the statute and it should be addressed in some manner."

Despite the district court pointing out a potential defect in the KORA procedure (or lack thereof), Sims did not make this or any other procedural due process argument. Sims, however, did present evidence about his income and essential living expenses during the three registration periods at issue. And the district court found Sims had been indigent during those periods. Nevertheless, no finding of indigency had been made by a court *before* Sims' failure to pay the fee, and the district court found no merit to Sims' legal arguments and convicted him as charged.

Sims timely appealed, arguing the district court erred in denying his motions. In Sims' appellate brief presented to the Kansas Court of Appeals, his attorney from the Appellate Defenders Office (ADO) pursued the arguments raised in the district court by briefing the alleged violations of constitutional protections of equal protection, of substantive due process, and against self-incrimination. The ADO also argued the district court improperly used Sims' criminal history in imposing sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The Court of Appeals rejected Sims' arguments and affirmed his convictions and sentence. See *State v. Sims*, No. 114,959, 2017 WL 1830359 (Kan. App. 2017) (unpublished opinion).

4

Sims sought this court's review of the Court of Appeals decision, and this court granted his request. In the petition, Sims continued to make an as-applied substantive due process argument under the Due Process Clause, an Equal Protection Clause argument, and his *Apprendi* argument. Between the filing of the briefs and oral argument before this court, three things occurred that changed the course of this appeal.

First, a panel of the Court of Appeals decided *State v. Owens*, 55 Kan. App. 2d 290, 411 P.3d 1247 (2018). That appeal arose because Frederick Owens was also required to register as a sex offender, had registered his address and other information but had been unable to afford the $20 registration fee during three registration periods, and had been convicted in Wyandotte County for failing to timely pay the registration fee. On appeal, Owens argued the KORA registration provisions—as applied to him—violated the Fourteenth Amendment's *procedural* due process guarantee. Owens' argument thus varied from Sims' contention that the KORA registration provisions violated his *substantive* due process rights. The *Owens* panel discussed the factual basis for Owens' argument, noting:

> "Some evidence was presented at a preliminary hearing on Owens' interactions with the sheriff's office. Owens said he told personnel there that he couldn't afford the fee and that no one told him he could seek an indigency determination from the court. An officer who interacted with Owens, Lisa Williams, testified that she told Owens to 'talk to an attorney' about getting a waiver, though she conceded that folks seeking an indigency determination weren't likely to be able to afford an attorney." 55 Kan. App. 2d at 291-92.

Turning to the substance of Owens' argument, the Court of Appeals held the statute—as applied to Owens—violated the Fourteenth Amendment's right to procedural due process.

5

"When a protected liberty or property interest is involved, we must then determine what process or procedures the person is entitled to. *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, Syl. ¶ 7, 291 P.3d 1056 (2013); *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). While there's no one-size-fits-all answer about the procedure to follow—it depends based on the interests involved—the basic requirements are that the person receive notice of the governmental action that would limit a liberty or property interest and an opportunity to be heard. See *Goldberg v. Kelly*, 397 U.S. 254, 267-68, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 22, 287 P.3d 855 (2012); *State v. Robinson*, 281 Kan. 538, 547-48, 132 P.3d 934 (2006); 3 Rotunda & Nowak, Treatise on Constitutional Law:  Substance and Procedure § 17.8(h) (5th ed. 2012). Owens' rights were violated because he wasn't given an opportunity to be heard on his indigency claim before he had committed the offense.

"Two aspects of the situation are critical. First, failing to pay the fee is an absolute-liability offense. Once Owens failed to pay, he had committed the offense and couldn't later use indigency as a defense. See K.S.A. 2014 Supp. 21-5203(f); K.S.A. 2014 Supp. 22-4903; K.S.A. 2014 Supp. 22-4905. Second, consistent with that first point, Owens had to have a court determine his indigency *before* the reporting date. K.S.A. 2014 Supp. 22-4905(k)(3) waives the registration fee only when '*prior to* the required reporting and within the last three years' there has been a court determination of the offender's indigency.

"The problem is that the statute didn't provide any procedure for Owens to seek that court determination. What should Owens have filed? Would the clerk have accepted it and sent it on to a judge for review? Would the judge have considered it a valid proceeding and gone on to make an indigency determination? We can't be at all sure of the answer to any of those questions, and the statute says nothing about them. Even if we assume that there is some implied grant of jurisdiction to the district court to handle some sort of miscellaneous action to make this determination, given the uncertainties and lack of direction, this can't be sufficient process to meet constitutional requirements when a person's liberty is at stake.

"In sum, no one gave Owens notice of a procedure he could use to get a court to determine he was unable to pay the $20 before his registration dates. Nor has the

6

Legislature provided any clear guidance about how one might do so. We conclude that Owens' right to procedural due process was violated." *Owens*, 55 Kan. App. 2d at 292-93.

The Court of Appeals panel reversed Owens' convictions and vacated his sentences. The State, represented by the same assistant district attorney as the one arguing in Sims' appeal, did not file a petition for review of the *Owens* decision, and it became final.

The second thing that changed the course of this appeal occurred when the attorney from the ADO who filed Sims' appellate brief and his petition for review filed a notification letter of additional authority under Supreme Court Rule 6.09 (2019 Kan. S. Ct. R. 39), asking us to consider *Owens*. Counsel acknowledged the *Owens* panel found a constitutional violation because of a procedural due process violation instead of the substantive due process violation argued by Sims. Still, counsel asked us to consider *Owens* for its "potential application to this case, as Mr. Sims' case presents similar facts."

The third change occurred when the attorney on Sims' briefs and his 6.09 letter withdrew and another attorney from the ADO entered his appearance for oral argument. The new attorney was the same attorney who had successfully handled Owens' appeal. At oral argument, Sims' new attorney focused on the procedural due process arguments discussed in *Owens*. Counsel recognized Sims had not directly raised the argument in briefing but argued the procedural and substantive due process arguments are so intertwined this court could not decide one without considering the other. Perceiving he faced preservation and waiver obstacles, he also argued we should consider *Owens* for reasons of judicial economy. He pointed out that Sims would merely raise *Owens* in postconviction proceedings. Finally, he argued we should consider Sims' appeal as a facial challenge—that is, based on consideration of KORA as written rather than as it applied to him. Sims' counsel noted a facial challenge would present only a question of law we could hear for the first time on appeal. See *State v. Gross*, 308 Kan. 1, Syl. ¶ 1,

417 P.3d 1049 (2018) (discussing exceptions to general rule that parties must submit issue to trial court to preserve issue for appeal, one exception being if "newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case"). Counsel also pointed out the argument was one that undoubtedly will recur. Counsel's arguments are at least partially compelling.

Generally, an appellate opinion acts prospectively, applying "'to all cases, state or federal, pending on direct review or not yet final.'" *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013) (quoting *State v. Berry*, 292 Kan. 493, 514, 254 P.3d 1276 [2011]); see S*tate v. Barnes*, 278 Kan. 121, 122-28, 92 P.3d 578 (2004) (holding defendant entitled to application of *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 [2004], even though she had not initially argued *McAdam*'s rational because her direct appeal was still pending when *McAdam* was decided). This rule does not squarely apply here, however, because *Owens* is not binding on this court. Yet, the State—represented by the same assistant district attorney as the one involved in this case—chose not to seek this court's review of *Owens* and it has become final. And while *Owens* was a constitutional challenge based on the way the statute applied to Owens, the circumstances presented by Owens are similar to those presented in the State's and Sims' joint stipulated facts.

As we have previously noted, with many attorneys representing defendants, it is

"probably inevitable that some [defendants] were slower than others to get a ticket on the . . . gravy train [of new appellate caselaw]. So too the courts. Our common law method is sometimes painfully narrow and incremental. Although it should ideally get all cases to which a new rule applies on the same page simultaneously, this cannot always happen, for a variety of ponderous and pedestrian reasons." *State v. Layton*, No. 98,275, 2009 WL 1859918, at *10 (Kan. 2009) (unpublished opinion).

To ameliorate the inequity that results from timing as a new argument percolates in the appellate courts, in *Layton* we invoked "equity and fundamental

fairness. . . . [u]nder the unique circumstances" of that appeal to allow John Don Layton an opportunity to seek application of new caselaw. One of the unique circumstances was that Layton's direct appeal had been contemporaneously argued with other appeals that ended in relief for appellants who had presented similar issues on similar facts to those considered in *Layton*. 2009 WL 1859918, at *12. For the same reason, Sims should be entitled to argue that, like Owens, he did not have access to procedures for establishing indigency and thus *Owens*' holding that K.S.A. 2013 Supp. 22-4903 is unconstitutional applies to his case as well. See *Owens*, 55 Kan. App. 2d at 293.

Sims' counsel also argued we should consider this argument now for reasons of judicial economy because postconviction proceedings seem inevitable. *Layton* provides some guidance. There we were dealing with rapidly evolving caselaw after our *McAdam* decision. We noted that Layton's counsel, an attorney in the ADO where other attorneys had also handled *McAdam* and related successful appeals, had not raised the argument that prevailed in *McAdam*. But the ADO raised the *McAdam* argument at the first opportunity, which was "early enough under the unusual and constantly shifting circumstances that this court should have addressed it." *Layton*, 2009 WL 1859918, at *10. Likewise, Sims' counsel raised *Owens* soon after the Court of Appeals filed the decision.

In *Layton*, we reviewed the dynamic situation and considered whether Layton had received ineffective assistance of counsel. To succeed on such a claim, a defendant must show that "(1) counsel's performance was deficient and (2) the defendant was prejudiced by counsel's deficient performance to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful." 2009 WL 1859918, at *8; see *State v. Butler*, 307 Kan. 831, 852-53, 416 P.3d 116 (2018).

Typically, appellate courts do not consider such ineffective assistance of counsel claims for the first time on direct appeal. *Rowland v. State*, 289 Kan. 1076, 1084, 219

9

P.3d 1212 (2009). Sometimes, however, an ineffective assistance of counsel claim does not become evident until appeal. As a result, this court established a procedure to deal with such situations in *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). Usually, this procedure includes a remand to the district court for a determination of merits of the claim. In rare cases, however, an appellate court can make an ineffective assistance of counsel determination from the record. See *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 (2000); *Layton*, 2009 WL 1859918, at \*10.

This case presents that rare exception, at least in part. Even though we do not usually require attorneys to read tea leaves and predict which arguments an appellate court will accept, there are times when "a lawyer's failure to foresee a change in the law may lead to . . . relief if the failure was not objectively reasonable." *Laymon v. State*, 280 Kan. 430, 439-40, 122 P.3d 326 (2005). Here, trial counsel's failure to foresee a procedural due process argument was not objectively reasonable because the district court observed on the record that there "is a procedural problem with the statute." Yet Sims' trial counsel failed to advance the argument. Those circumstances present us with one of those rare cases in which we can determine from the record that Sims' trial counsel's performance was deficient.

Sims' appeal flowed from the issues preserved in the district court. Thus, appellate counsel's options were limited. That said, to the extent Sims might assert claims of deficient assistance against the ADO for not raising earlier arguments of procedural due process or ineffective assistance of counsel, we can resolve that question as well. In *Laymon*, where fellow lawyers in the ADO were contemporaneously presenting various arguments related to the same underlying legal defect, we charged the entire ADO with knowledge of the various arguments "worthy of preservation and pursuit." 280 Kan. at 442; but see *Barr v. State*, 287 Kan. 190, 197, 196 P.3d 357 (2008) (declining to extend *Laymon* to appellate counsel outside the ADO). Given the outcome of *Owens*, we can conclude the procedural due process argument being advanced by some attorneys was at

10

least worthy of preservation and pursuit. We thus hold Sims can satisfy the first prong of an ineffective assistance of counsel claim—deficient performance by counsel.

We cannot determine the second prong—prejudice—on the record before us, however. Certainly, Sims' trial counsel's failure to raise the procedural due process argument meant it had not been preserved for direct appeal, at least as applied to Sims. And, if preserved, the possibility exists Sims, like Owens, would have had his convictions set aside. But we cannot know how likely that result would be based solely on *Owens* because it involved the constitutionality of the relevant KORA provisions as applied to Owens, not to Sims. The *Owens* panel explained:

> "Owens has asked us to address only his own situation; he has challenged the constitutionality of the statute as applied to him, not in a more general way. We therefore address only that application. There could be other situations in which a defendant has adequate access to procedures for establishing indigency. For defendants who have had a criminal case pending within the three-year window before a registration date, for example, there's a recognized procedure for indigency determinations. See K.A.R. 105-4-1(a) (2016 Supp.)." *Owens*, 55 Kan. App. 2d at 293.

We know Sims' circumstances are like Owens'. Sims and the State stipulated that Sims had not had an indigency determination in the three years before he failed to pay the registration fee. And the district court found that Sims had been indigent during this time. But we do not know what additional facts Sims or the State would have presented if Sims had initially presented the procedural due process challenge in district court. And those facts might distinguish Sims' case from *Owens*. Thus, a remand is necessary to allow the parties to develop a record.

Sims suggests we can avoid this problem by considering his argument to be a facial one. But Sims did not brief and *Owens* did not decide that legal argument. At a minimum, additional briefing would need to occur. We conclude the factual and

11

procedural record does not allow us to assess the merits of either an as-applied or a facial procedural due process argument. This means we cannot assess the prejudice prong to determine whether Sims' trial counsel was ineffective.

Generally, parties must request a remand, but we have recognized the appropriateness of the court remanding without a request. See *Rowland*, 289 Kan. at 1084 (recognizing sua sponte power to remand in *Van Cleave* context). On the other hand, we have declined to remand a case when counsel has explicitly informed the court a party did not request a remand. See *State v. Dull*, 298 Kan. 832, 839-40, 317 P.3d 104 (2014). Here, while Sims' counsel argued we could decide the case without remand, he did not go so far as to say he was not seeking a remand. Similarly, the State argued against allowing consideration of the procedural due process argument but recognized the court's power to sua sponte remand.

We hold the rare circumstances presented in Sims' appeal raise considerations of judicial economy, fairness, and equity that warrant a remand to allow the parties to develop any facts relating to a procedural due process argument that will allow the district court to rule on the merits of those arguments. That ruling will decide the second prong of the test about whether trial counsel was ineffective for failing to raise the argument. That is, was Sims prejudiced by counsel's deficient performance to the extent there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful? See *Layton*, 2009 WL 1859918, at *8. Once the district court has made findings and conclusions, we can move forward with this appeal and ultimately determine the merits of Sims' arguments. We therefore retain jurisdiction. See *Van Cleave*, 239 Kan. at 120-21.

CONCLUSION

We remand for the appointment of new counsel for Sims and for further proceedings by the district court, as outlined above. This court retains appellate jurisdiction.

The parties are ordered to file a copy of the district court's final decision on remand in this court no later than 30 days after its entry.

If appellant wishes to have this court review any adverse decision from the district court upon remand, he may submit an amended notice of appeal with 14 days of the entry of that judgment. If appellant does so, he must also file in this court any other documents that would be required for docketing an appeal in the first instance under Supreme Court Rule 2.04(a)(1) (2019 Kan. S. Ct. R. 15).

* * *

STEGALL, J., dissenting:  In my judgment, a remand is not factually warranted on the ground of ineffective assistance of trial counsel. It is asking too much of defense counsel to anticipate which new and untried constitutional claims may prove successful in future cases not yet decided. If, for example, this court were to reject the outcome of *State v. Owens*, 55 Kan. App. 2d 290, 411 P.3d 1247 (2018), would that mean Sims' trial counsel had not been ineffective?

Instead, I would simply accept Sims' invitation to consider his challenge as a facial one presenting only questions of law that may be considered for the first time on appeal. See Slip op. at 7. Even following the ordered remand, there may remain—outside the scope of the limited remand—constitutional doubts about this statute that present pure questions of law on uncontested facts. For example, in an appropriate case and following

13

a full briefing by the parties, I would welcome an examination of whether imposing criminal strict liability for the failure to pay a $20 administrative fee—which may be a felony punished by significant time in prison—is a constitutional exercise of state police power under the Kansas Constitution. See *State v. Ingham*, 308 Kan. 1466, 1483, 430 P.3d 931 (2018) (Stegall, J., concurring) (noting limits on the exercise of state police powers).