(66 P.3d 252)
No. 88,139
STATE OF KANSAS, *Appellee,* v. BRIAN KEITH MCADAM, *Appellant.*

Opinion filed April 11, 2003.

*Randall L. Hodgkinson,* deputy appellate defender, for appellant.

*Frederick B. Campbell,* county attorney, and *Phill Kline,* attorney general, for appellee.

Before BEIER, P.J., ELLIOTT and GREEN, JJ.

GREEN, J.: Brian Keith McAdam appeals from his convictions by a jury of conspiracy to unlawfully manufacture methamphetamine, attempted possession of anhydrous ammonia, attempted theft, and conspiracy to possess anhydrous ammonia. On appeal, McAdam contends that the evidence was insufficient to sustain his conviction of conspiracy to unlawfully manufacture methamphetamine and attempted theft. We disagree. In addition, McAdam contends that the evidence was insufficient to show that either he or his accomplices attempted to possess anhydrous ammonia or conspired to possess anhydrous ammonia in an unapproved container. We agree and reverse. McAdam further contends that the trial court wrongly failed to give the jury a cautionary instruction regarding an accomplice testimony. We disagree and affirm. Additionally, McAdam maintains that the trial court imposed an illegal sentence. We disagree. Finally, McAdam contends that the attor-

ney fees assessed against him were excessive. We direct the trial court to determine the appropriate amount of attorney fees which can be imposed under K.S.A. 2002 Supp. 22-4513, K.A.R. 105-5-7, and the Board of Indigents' Defense Services (BIDS) reimbursement tables.

McAdam was staying at the home of his friend Marcus Maley. Maley lived with his girlfriend and her son. Maley and McAdam agreed to manufacture methamphetamine. They had made methamphetamine before and decided it was time to make more. Maley usually would act as a lookout and "go fer." He would help McAdam by removing ephedrine pills from blister packs, poking holes in cans of ether, and performing other menial tasks.

On this occasion, Maley and McAdam had everything they needed to make methamphetamine except anhydrous ammonia. They decided to use Maley's car to steal anhydrous ammonia from the Kincaid Co-Op.

Before leaving, Casey Carter joined Maley and McAdam at Maley's home. While Maley changed into dark clothes, either McAdam or Carter loaded Maley's girlfriend's car with the materials for the manufacturing process. The group left in Maley's car at around 9:30 or 10 that night. Maley drove, Carter sat in the front passenger seat, and McAdam rode along in the back seat. Maley and McAdam brought along two cooler-like water jugs to carry the anhydrous ammonia and a larger cooler. During the trip, McAdam operated a scanner and looked through a list of scanner frequencies. McAdam did not have any particular responsibility during the trip. Once at the Kincaid Co-op, Carter got out of the car to steal the anhydrous ammonia as planned.

Deputy Max Skelton was also at the Kincaid Co-op, checking on the anhydrous ammonia tanks, when he saw tracks, smelled ammonia, and saw a white male running away from the anhydrous ammonia tanks into the woods. As he was attempting to stop the man, Skelton saw a car turn on its headlights and slowly drive by. When Skelton stopped the car, he observed that Maley was driving the car and McAdam was in the back seat. Undersheriff Darin Dalsing arrived and noticed frost on one of the hoses of an anhydrous ammonia tank.

During the stop, Maley gave the officers consent to search his car. In the trunk of the car, Skelton discovered an ice chest containing a single water jug that smelled of anhydrous ammonia and a margarine container with an orange powder residue that smelled of ether. This residue later tested positive for methamphetamine. The officers also discovered two scanners, a list of scanner frequencies, a single walkie-talkie, and night vision goggles in the car.

Maley asked Dalsing what he could do to stay out of jail. Dalsing told Maley it depended on what information he could provide. Maley stated he could give the officer McAdam's methamphetamine lab.

Maley then gave the officers consent to search his house and his girlfriend's car. In the trunk of his girlfriend's car, officers discovered a shotgun, starting fluid, coffee filters, a face mask, lithium batteries, rock salt, drain opener, a weed sprayer, propane bottles, a heater, a two-liter bottle full of ether, a digital scale, rubber gloves, and ten bottles of ephedrine tablets. In Maley's garage, officers discovered a bag of green vegetation and zig-zag rolling papers. A few days later, a Kincaid employee found two water jugs, one of which was half full of anhydrous ammonia, in some trees in the vicinity of the anhydrous ammonia tanks.

Maley gave officers a written statement that McAdam had given him some money to give him a ride. While Maley was driving, an unknown individual got in the car, and they drove to the Kincaid Co-Op to steal anhydrous ammonia. Although Maley was originally charged with a number of crimes related to this incident, these charges were later dismissed without prejudice in exchange for his testimony against McAdam.

McAdam was charged with 10 counts: (1) attempted unlawful manufacture of methamphetamine, (2) conspiracy to commit unlawful manufacture of methamphetamine, (3) possession of methamphetamine, (4) felony possession of drug paraphernalia, (5) attempted possession of anhydrous ammonia, (6) criminal possession of a firearm, (7) attempted theft, (8) misdemeanor possession of drug paraphernalia, (9) criminal trespass, and (10) conspiracy to possess anhydrous ammonia.

During the jury trial, Maley testified that he had lied in his written statement to the police. McAdam elected not to present any evidence.

The jury found McAdam not guilty of Count 1, attempt to commit unlawful manufacture of methamphetamine; Count 3, possession of methamphetamine; Counts 4 and 8, possession of drug paraphernalia; Count 6, possession of a firearm; and Count 9, criminal trespass. The jury found McAdam guilty of Count 2, conspiracy to commit unlawful manufacture of methamphetamine; Count 5, attempt to unlawfully possess anhydrous ammonia; Count 7, attempted theft; and Count 10, conspiracy to unlawfully possess anhydrous ammonia.

McAdam was sentenced to 173 months in prison. He was also ordered to pay $4,890 in attorney fees.

*Was there sufficient evidence of an overt act to support McAdam's conviction for conspiracy to commit unlawful manufacture of methamphetamine?*

McAdam first maintains that there was insufficient evidence at trial to support his convictions. "When sufficiency of the evidence is attacked, the standard of review is 'whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Zabrinas*, 271 Kan. 422, 441-42, 24 P.3d 77 (2001).

McAdam first attacks his conviction for conspiracy to commit unlawful manufacture of methamphetamine based on insufficient evidence. The first element of conspiracy is "an agreement between two or more persons to commit or assist in committing a crime . . . . [Citation omitted.]" *State v. Smith*, 268 Kan. 222, 227, 993 P.2d 1213 (1999); see K.S.A. 21-3302(a). The agreement can be either expressed or implied. 268 Kan. at 228.

McAdam maintains that there was insufficient evidence to show that a party to the agreement to manufacture methamphetamine acted in furtherance of the agreement. He admits there was evidence that he and Maley entered into an agreement to manufac-

ture methamphetamine. However, he argues that there was no evidence that Carter, the person who actually attempted to steal the anhydrous ammonia, was part of the agreement.

The jury drew a reasonable conclusion that because Carter had joined Maley and McAdam in their quest to obtain anhydrous ammonia, he had agreed to help them manufacture methamphetamine. Because Maley drove Carter to the Kincaid Co-Op and because McAdam was checking scanner frequencies in the backseat of Maley's vehicle, it was reasonable for the jury to conclude that Carter was a coconspirator. A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Penn*, 271 Kan. 561, 564, 23 P.3d 889 (2001). Thus, there was sufficient evidence to support the inference that Carter had agreed to the conspiracy.

The second element for the crime of conspiracy is an overt act in furtherance of the conspiracy. This element must be alleged and proved to have been committed by the defendant or by a coconspirator. K.S.A. 21-3302(a). The overt act alleged in the complaint is that McAdam or a coconspirator attempted to steal anhydrous ammonia. The jury was similarly instructed that it had to find that McAdam or a coconspirator attempted to steal anhydrous ammonia.

McAdam asserts that the attempt to steal anhydrous ammonia was not an overt act as a matter of law. In *State v. Hill*, 252 Kan. 637, 642, 847 P.2d 1267 (1993), our Supreme Court noted: " 'An overt act which completes crime of conspiracy to violate federal law is something apart from conspiracy and is an act to effect the object of the conspiracy, and need be neither a criminal act, nor crime that is object of conspiracy, but must accompany or follow agreement and must be done in furtherance of object of agreement.' [Citation omitted.]" (quoting Black's Law Dictionary 1104 [6th ed. 1990]).

Although McAdam cites *State v. Chism*, 243 Kan. 484, 759 P.2d 105 (1988), and *State v. Garner*, 237 Kan. 227, 699 P.2d 468 (1985), in support of his argument that an overt act must extend beyond "mere preparation," the language in both cases referred to overt acts for the crime of attempt, rather than conspiracy.

Here, there was sufficient evidence that the act of attempting to steal anhydrous ammonia was done in furtherance of the parties' agreement and plan to commit the unlawful manufacture of methamphetamine. Evidence existed that McAdam and Maley had agreed to manufacture methamphetamine. All they lacked was anhydrous ammonia. Thus, the act to acquire the anhydrous ammonia was in furtherance of their agreement. Because the State did not have to demonstrate that this act extended beyond mere preparation, McAdam's argument fails.

*Was there sufficient evidence of an overt act to support McAdam's convictions for attempted theft and attempted possession of anhydrous ammonia?*

Next, McAdam contends that there was insufficient evidence to support his two attempt convictions—attempted theft and attempted possession of anhydrous ammonia. Again, he argues that no overt act existed upon which the attempt can be based.

"An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 21-3301(a). There is no definite rule for what constitutes an overt act, but it must be beyond "mere preparation," yet less than completion of the offense. *Garner*, 237 Kan. at 238.

McAdam argues that the evidence shows only that he was riding along in Maley's car on the night of the incident. However, Maley's testimony at trial went further than that. McAdam told Maley that anhydrous ammonia was the only ingredient they were lacking to produce methamphetamine. McAdam was part of the discussion regarding who was going to get the anhydrous ammonia and how they would do it. McAdam had one two-way radio in the back seat with him, and Carter had the other. As a result, sufficient evidence existed that McAdam had performed an overt act in furtherance of his attempt to take anhydrous ammonia from the Kincaid Co-Op and possess it in an unapproved container.

*Was there sufficient evidence that McAdam or his accomplices attempted to possess anhydrous ammonia or conspired to possess anhydrous ammonia in an unapproved container?*

Next, McAdam maintains that insufficient evidence existed to support his convictions for attempted possession of anhydrous ammonia and conspiracy to possess anhydrous ammonia. Both of these counts were based on the crime of unlawful possession of anhydrous ammonia, which included the following element: "That the defendant knowingly possessed with the intent to use anhydrous ammonia for the illegal production of a controlled substance *in a container not approved for that chemical by the Kansas Department of Agriculture.*" (Emphasis added.) McAdam asserts that no evidence was presented that he or his coconspirators or fellow actors conspired or attempted to possess anhydrous ammonia in a container that was not approved by the Kansas Department of Agriculture. We agree.

As a result, we determine that when a defendant is charged with attempted possession of anhydrous ammonia or conspiracy to possess anhydrous ammonia, the State is required to prove that the container used in the previously mentioned crimes is not approved by the Kansas Department of Agriculture. Because the State failed to prove that McAdam or his coconspirators conspired or attempted to possess anhydrous ammonia in a container not approved by the Kansas Department of Agriculture, we reverse McAdam's convictions for attempt to unlawfully possess anhydrous ammonia and conspiracy to unlawfully possess anhydrous ammonia.

*Was the court required to give a cautionary instruction?*

Next, McAdam contends that the trial court erred in failing to give the jury a cautionary instruction regarding Maley's testimony, even though he did not ask the trial court to do so. The cautionary instruction at issue states: "An accomplice witness is one who testifies that (he) . . . was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice." PIK Crim. 3d 52.18.

When a defendant does not request this instruction, the trial court's failure to give it will not be disturbed unless it is clearly erroneous. *State v. Thomas*, 252 Kan. 564, Syl. ¶ 7, 847 P.2d 1219 (1993). "Instructions are clearly erroneous only if the reviewing

court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. [Citation omitted.]" *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

Although it would have been advisable for the trial court to give this cautionary instruction to the jury, McAdam has failed to show that there was a real possibility the jury would have rendered a different verdict if the cautionary instruction had been given. Maley's testimony at trial sufficiently alerted the jury to view his testimony with caution, even without this instruction. Maley admitted that the written statement he had given to law enforcement officers shortly after his arrest was not true. A copy of Maley's agreement with the State to testify in exchange for the dismissal of the charges was admitted into evidence, thus alerting the jury that Maley had a reason to implicate McAdam. The jury was also informed of Maley's 1992 felony theft convictions. Maley admitted he was a drug user and had a problem with drugs. Thus, even without the cautionary instruction, the jury could not have failed to see that Maley's credibility was tarnished. It, nevertheless, chose to believe his testimony.

Furthermore, in *State v. Crume*, 271 Kan. 87, 94-95, 22 P.3d 1057 (2001), the defendant asserted that the trial court erred in failing to give a cautionary instruction to the jury. The court observed that such an instruction was not necessary when the jury was otherwise instructed regarding the weight to be given to testimony. Because the jury was so instructed and corroborating testimony supported the accomplice's testimony, an accomplice instruction was not required. 271 Kan. at 95.

In this case the jury was instructed as follows: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." This instruction, in combination with the corroborative evidence found in Maley's car, makes the trial court's failure to instruct the jury on accomplice testimony harmless. As a result, McAdam's argument fails.

*Did the trial court impose an illegal sentence?*

Next, McAdam argues that his sentence was illegal. At sentencing, McAdam's primary offense was conspiracy to unlawfully manufacture methamphetamine under K.S.A. 65-4159(b), a drug severity level 1 felony offense, which carried a sentence of 173 months. McAdam now argues that the offense of conspiracy to unlawfully manufacture methamphetamine under K.S.A. 65-4159(b) was identical to the offense of compounding a stimulant under K.S.A. 65-4161(a), a drug severity level 3 felony offense.

McAdam did not raise this issue before the trial court. Generally, the failure to do so precludes appellate review. See *State v. Smith,* 268 Kan. at 243 (issue not presented to trial court will not be considered for first time on appeal). However, K.S.A. 22-3504(1) allows appellate courts to correct an illegal sentence at any time. *State v. Sisk,* 266 Kan. 41, 43, 966 P.2d 671 (1998). An illegal sentence is one " 'imposed by a court without jurisdiction, a sentence which does not conform to the statutory provision, either in the character or the term of the punishment authorized, or a sentence which is ambiguous with respect to the time and manner in which it is to be served. [Citations omitted.]' " *State v. Johnson,* 269 Kan. 594, 600, 7 P.3d 294 (2000) (quoting *State v. Duke,* 263 Kan. 193, 194, 946 P.2d 1375 [1997]).

When two offenses are identical, a defendant can only be sentenced under the offense with the lesser penalty. *State v. Clements,* 241 Kan. 77, 83, 734 P.2d 1096 (1987). If the offenses under K.S.A. 65-4159(a) and K.S.A. 65-4161(a) are identical, McAdam must be resentenced under the statute carrying the lesser penalty. The interpretation of a statute is a question of law, and this court's review is unlimited. *State v. Engles,* 270 Kan. 530, 532-33, 17 P.3d 355 (2001).

McAdam was convicted under K.S.A. 65-4159(a), which states: "Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture any controlled substance or controlled substance analog." Subsection (b) makes this a drug severity level 1 felony. As used in the Uniform Controlled Substances Act (K.S.A. 65-4101 *et seq.*), the term "manu-

facture" means the "compounding . . . of a controlled substance
. . . ." K.S.A. 65-4101(n). The term "controlled substance" in-
cludes methamphetamine. See K.S.A. 65-4101(e); K.S.A. 65-
4107(d)(3).

By comparison, K.S.A. 65-4161(a) states:

"Except as authorized by the uniform controlled substances act, it shall be
unlawful for any person to sell, offer for sale or have in such person's possession
with intent to sell, deliver or distribute; prescribe; administer; deliver; distribute;
dispense or *compound* any opiates, opium or narcotic drugs, or any stimulant
designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107 and amendments
thereto. Except as provided in subsections (b), (c) and (d), any person who violates
this subsection shall be guilty of a drug severity level 3 felony." (Emphasis added.)

Subsections (b), (c), and (d) provide different severity levels de-
pending on whether there were previous similar crimes or the
crime was committed near a school and do not apply to this case.
The list of drugs at K.S.A. 65-4107(d)(3) includes methampheta-
mine.

Although both K.S.A. 65-4159(a) and K.S.A. 65-4161(a) address
the same offense, the compounding of methamphetamine, the stat-
utes impose different penalties. Recently, in *State v. Frazier*, 30
Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002),
this court concluded that possession of ephedrine or pseudoe-
phedrine under K.S.A. 65-7006(a) and possession of drug para-
phernalia under K.S.A. 2001 Supp. 65-4152(a)(3) are identical of-
fenses despite their different terminology. As a result, the court
vacated Frazier's sentence and remanded the case to impose a
sentence consistent with the offense with the lesser penalty.

Despite McAdam's attempt to persuade the court that *Frazier's*
logic should apply here, there is an important difference between
the statutes at issue in *Frazier* and those involved in the case at
hand. Although K.S.A. 65-4159(a) and K.S.A. 65-4161(a) contain
identical elements as applied to this case, K.S.A. 65-4161(g) states:
"The provisions of this section shall be part of *and supplemental
to the uniform controlled substances act*." (Emphasis added.) Thus,
it seems that K.S.A. 65-4161 was intended to fill the gaps in the
Uniform Controlled Substances Act.

"General and special statutes should be read together and har-monized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling. [Ci-tation omitted.]" *In re Estate of Antonopoulos*, 268 Kan. 178, 189, 993 P.2d 637 (1999). Furthermore, although criminal statutes should be interpreted in favor of the accused, "judicial interpre-tation must be reasonable and sensible to effect legislative design and intent. [Citation omitted.]" *State v. McGill*, 271 Kan. 150, 154, 22 P.3d 597 (2001). The language in K.S.A. 65-4161(g) indicates it was the legislature's intent to make K.S.A. 65-4161 a general statute, which only applies when no other statute will.

K.S.A. 65-4159 clearly applies to the unlawful manufacture of methamphetamine. Because there is no conflict between K.S.A. 65-4159(a) and K.S.A. 65-4161(a), the trial court appropriately sen-tenced McAdam under the special statute, K.S.A. 65-4159. See *State v. Luttig*, 30 Kan. App. 2d 1125, 54 P.3d 974, *rev. denied* 275 Kan. 967 (2002) (holding defendant was properly sentenced under special statute that conflicted with general statute). Thus, McAdam's argument fails.

We also note that McAdam has challenged the trial court's order to reimburse the BIDS in the amount of $4,890 for the cost of his legal representation as part of his sentence, arguing he can only be held responsible for a maximum of $2,500. We instruct the trial court to determine the appropriate amount of attorney fees which can be imposed under K.S.A. 2002 Supp. 22-4513, K.A.R. 105-5-7, and the BIDS reimbursement tables.

Affirmed in part, reversed in part, and remanded for resentenc-ing in accordance with this opinion.