(130 P.3d 1229)

No. 93,699

EDWIN L. TOMLIN, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed March 31, 2006.

*Michael P. Whalen,* of the Law Office of Michael P. Whalen, of Wichita, for appellant.

*Leslie Isherwood* and *Matt J. Maloney,* assistant district attorneys, *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before McANANY, P.J., PIERRON and CAPLINGER, JJ.

McANANY, J.: Edwin L. Tomlin appeals the district court's summary denial of his K.S.A. 60-1507 motion. Tomlin claims his trial and appellate counsel were ineffective.

The State charged Tomlin with rape and aggravated indecent liberties with his 10-year-old stepdaughter. At trial the State admitted K.S.A. 60-455 evidence of his having engaged in the sexual abuse of five children from his prior marriages, some of which Tomlin ultimately admitted. During its deliberations, the jury sent the following note to the judge, indicating its less than unanimous findings on both counts:

"We are hung, 3 for Guilty to Count 1, 3 for Not Guilty to Count 1 or 2 due to reasonable doubt, 6 for Guilty to Lesser Charge of Count 1 and Guilty to Count 2. We reviewed the facts and your instructions. We have discussed how to 'compromise' but we all feel very strongly that we must vote what we believe. Also we feel strongly about our Duty to reach a decision for this Trial. To help us break our deadlocks—what can you say or do for us? We want to come to a decision."

Over Tomlin's objection, the court gave the jury an *Allen*-type instruction. After further jury deliberations, Tomlin's counsel moved for a mistrial. A short time later, the jury sent another note to the court, stating:

"We have moved to 11 guilty to count 1 of the lesser aggravated indecent liberties and 1 not guilty to count 1 or count 2 due to reasonable doubt. We have all agreed to Not Guilty to Count 1 Rape. Since 3 p.m. today, we have made good progress. However, the one has stated that since we haven't convinced him of his reasonable doubt position that he will never change his mind. We are at an impasse. Most of the Jury feels further discussion will not change his mind."

Shortly thereafter, the State also moved for a mistrial. The court determined that the jury was deadlocked, declared a mistrial, and discharged the jury.

Tomlin then filed a timely motion for judgment of acquittal. He alleged that a retrial on the rape charge would subject him to double jeopardy based upon the jury's second message that all members agreed he was not guilty of rape. The court denied the motion.

Tomlin was retried and convicted of both counts. He renewed his motion for a judgment of acquittal on double jeopardy grounds, which the trial court denied. He received consecutive sentences of 334 months for rape and 51 months for aggravated indecent liberties with a child.

Tomlin appealed. *State v. Tomlin*, No. 83,638, unpublished opinion filed December 14, 2001. This court determined that the trial court did not abuse its discretion in granting the mistrial or in denying his motion for judgment of acquittal, noting that Tomlin did not withdraw his own motion for a mistrial or oppose the State's motion. The mistrial was proper due to the jury's inability to agree on a verdict. Further, there was no verdict since the jury was discharged before submitting a verdict pursuant to K.S.A. 22-3421.

Tomlin then filed his K.S.A. 60-1507 motion, claiming ineffective assistance of trial counsel and appellate counsel. The trial court summarily denied the motion, and this appeal follows.

We review the trial court's summary dismissal of Tomlin's K.S.A. 60-1507 motion to determine if the court abused its discretion. The district court had discretion to determine whether Tomlin's claims were substantial before granting an evidentiary hearing. See *Gaudina v. State*, 278 Kan. 103, 107-08, 92 P.3d 574 (2004); Supreme Court Rule 183(h) (2005 Kan. Ct. R. Annot. 228). The district court was not required to hold a hearing if Tomlin's motion and the files and records of the case conclusively showed he was not entitled to relief. K.S.A. 60-1507(b).

*Trial Counsel*

Tomlin claims his trial counsel was ineffective because he failed to object to the mistrial and failed to request that the court publish the jury's note as a verdict on the rape charge, and thereby avoid

a retrial on that charge. In order for Tomlin to prevail, he must establish that his counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment and that, as a result, he was denied a fair trial. See *State v. Orr*, 262 Kan. 312, Syl. ¶ 1, 940 P.2d 42 (1997). To do so Tomlin must overcome the strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. Further, he must show that but for counsel's errors he would have achieved a better outcome at trial. See *State v. Betts*, 272 Kan. 369, 387-88, 33 P.3d 575 (2001).

After it appeared that the jury remained deadlocked despite receiving an *Allen*-type instruction, Tomlin's counsel moved for a mistrial. The jury's second note was sent approximately 20 minutes later. Shortly thereafter, the State moved for a mistrial which the court granted. At the time, defense counsel was on notice of the current state of Kansas law on partial verdicts, mistrials, and the prospect of a retrial on the same charges. That law was embodied in K.S.A. 21-3108, K.S.A. 22-3421, and *State v. McKay*, 217 Kan. 11, 535 P.2d 945 (1975).

K.S.A. 21-3108, which codifies the constitutional prohibition against double jeopardy, provides:

"(1) A prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution:

. . . .

(c) Was terminated without the consent of the defendant after the defendant had been placed in jeopardy, except where such termination shall have occurred by reason of: . . . (ii) the inability of the jury to agree . . . ."

K.S.A. 22-3421 requires a verdict to be in writing and signed by the presiding juror. Further, it requires the clerk to read the verdict to the jury and to inquire whether it is the jury's verdict.

In *McKay*, the court declared a mistrial when the jury was unable to reach a verdict on a second-degree murder charge. It later became apparent that when discharged, the jury had resolved the second-degree murder charge in McKay's favor but was hung on the lesser included offense of manslaughter. McKay filed a motion for judgment of acquittal on the second-degree murder charge. The court denied the motion, and McKay was retried for second-

degree murder. Following his conviction for manslaughter at the second trial, McKay appealed, claiming the second trial subjected him to double jeopardy. Citing K.S.A. 21-3108, the Supreme Court noted that a second prosecution is barred if the first prosecution "was terminated without the consent of the defendant after he was placed in jeopardy, except where the termination occurred *because it was impossible for the jury to agree on a verdict.*" *McKay,* 217 Kan. at 13. On the issue now before us of a possible partial verdict, the court cited with approval language from *People v. Doolittle,* 23 Cal. App. 3d 14, 19-20, 99 Cal. Rptr. 810 (1972), in which the court stated:

" '[I]n the trial of an offense which necessarily includes a lesser offense . . . the jury, before they can return a verdict, must, on the one hand, agree that the defendant is guilty of the offense charged or any included offense or, on the other hand, agree that he is not guilty of any offense, whether the greater or the lesser.' "

Thus, the status of Kansas law was (and is) that Kansas does not recognize partial verdicts, and absent a verdict on all charges in conformity with K.S.A. 22-3421 a defendant can be retried following a mistrial due to a hung jury.

Tomlin nevertheless argues that his trial counsel's performance was deficient because he failed to move the court for a partial verdict on the rape charge based upon the jury's second note. He claims that the language in *Doolittle,* which was relied upon by the Kansas Supreme Court in *McKay,* was effectively disavowed in *Stone v. Superior Court of San Diego County,* 31 Cal. 3d 503, 183 Cal. Rptr. 647, 646 P.2d 809 (1982).

In *Stone,* the jury agreed the defendant was not guilty of first-degree or second-degree murder, but was hung on the issues of voluntary and involuntary manslaughter. Defendant moved to accept the jury's verdict on the murder charge. The court denied the motion and ultimately declared a mistrial.

The defendant sought a writ of prohibition from the California Supreme Court to prevent a retrial, contending a retrial on the murder charge would constitute double jeopardy. The court held that a trial court is constitutionally obligated to provide the jury an opportunity to render a partial verdict of acquittal on a greater

offense when the jury is deadlocked only on an uncharged lesser included offense. The State could only retry the defendant for the lesser included offenses of manslaughter. (It is worth noting that in California, unlike in Kansas, there is no requirement that a verdict be in writing.)

The issue before us today is not the wisdom of the California procedure over that of Kansas. The issue is whether the performance of Tomlin's counsel fell below the professional standard demanded by the Sixth Amendment.

Stripped to its essentials, Tomlin's argument is as follows: Existing Kansas law does not permit a partial verdict. That law is based, at least in part, upon the language in a California case, *Doolittle*. That language in *Doolittle* was disavowed in a later opinion by the California Supreme Court in *Stone*. My lawyer moved for a mistrial before it was known that the jury apparently had resolved the rape charge in my favor. However, in the short period between the time my lawyer became aware of the second jury note and the court's declaration of a mistrial, he should have realized that withdrawing my mistrial motion, opposing the State's mistrial motion, and asking for a partial verdict on the rape charge would not have been a futility since the language in *Doolittle* relied upon by the Kansas Supreme Court in *McKay* was disavowed by the California Supreme Court in *Stone*; and the Kansas Supreme Court would, in all probability, reverse its ruling in *McKay* and sanction a partial verdict in my favor on the rape charge.

It would be laudable if trial counsel, when faced with an issue such as this, could, within the short time allotted, engage in the analysis of Kansas and California law that Tomlin suggests. In fact, it would be not only laudable but quite extraordinary. The Sixth Amendment does not set the bar for trial counsel's performance so high.

In *Baker v. State*, 20 Kan. App. 2d 807, 811, 894 P.2d 221, *rev. denied* 257 Kan. 1091 (1995), the court rejected a claim of ineffective assistance of counsel for failure of counsel to anticipate a change in Kansas law.

"In this case, appellant entered into a plea agreement based upon charges that were consistent with the applicable law at the time. We hold that he cannot

successfully challenge the voluntariness of his pleas based solely upon the fact that the State and defense counsel failed to apprise him of legal standards that would not be announced for another four years." 20 Kan. App. 2d at 810.

At least in *Baker* the law had actually changed between trial counsel's actions and the consideration of Baker's 60-1507 motion. Here, Tomlin's criticism is based on counsel's failure to anticipate a change in the law which has yet to occur and, in fact, may never occur. To meet the reasonableness standard for effective assistance, trial counsel need not be prescient or omniscient. We hold Kansas lawyers to an understanding of Kansas law, not California law. While the growth of the law is dependent upon creative lawyers advancing new theories, failure to do so does not render a lawyer's performance constitutionally deficient.

The performance of Tomlin's trial counsel was not constitutionally deficient. The trial court did not abuse its discretion in denying Tomlin relief on his claim of ineffective assistance of trial counsel.

### Appellate Counsel

Trial counsel did not handle Tomlin's direct appeal. Separate counsel represented him on appeal. Tomlin contends his appellate counsel was ineffective for raising the wrong issue on appeal. Rather than raising the issue of double jeopardy, Tomlin claims his counsel should have argued that the trial court's failure to publish the jury's acquittal and thereby render a partial verdict amounted to a constitutional error, the approach taken by the California Supreme Court in *Stone*.

The performance standards for appellate counsel are set forth in *State v. Smith*, 278 Kan. 45, 51-52, 92 P.3d 1096 (2004). In order for Tomlin to prevail on this claim, he must show not only that his appellate counsel's performance fell below an objective standard of reasonableness, but also that there is a reasonable probability that the appeal would have been successful but for his counsel's deficient performance.

The failure of appellate counsel to raise an issue on appeal is not, per se, ineffective assistance of counsel. *Jenkins v. State*, 32 Kan. App. 2d 702, 704, 87 P.3d 983, *rev. denied* 278 Kan. 845 (2004). However, "a lawyer's failure to foresee a change in the law

may lead to 60-1507 relief if the failure was not objectively reasonable." *Laymon v. State*, 280 Kan. 430, 439-40, 122 P.3d 326 (2005). The facts in *Laymon*, however, stand in stark contrast to those before us today.

In *Laymon*, our Supreme Court determined that appellate counsel's failure to preserve a *McAdam* argument was objectively unreasonable when "the state of the developing Kansas law counseled in favor of preserving the line of argument . . . ." *Laymon*, 280 Kan. at 444. Unlike the case now before us, the changes in the law were imminent in *Laymon*. A lawyer in the Appellate Defender Office (ADO) filed a direct appeal for Laymon. At that time, the argument raised by another lawyer in the ADO on behalf of a different defendant had been rejected by this court in *State v. McAdam*, 31 Kan. App. 2d 436, 66 P.3d 252 (2003), *aff'd in part, rev'd in part* 277 Kan. 136, 83 P.3d 161 (2004). However, the time had not yet expired for a petition for review of *McAdam* by the Supreme Court. Laymon's appellate counsel did not make any significant *McAdam* argument in his brief. Two months later the Supreme Court granted the petition for review in *McAdam* and ultimately reversed this court 6 months later.

Whether there should be movement in Kansas toward permitting partial verdicts is not the issue. The fact is, partial verdicts currently are not permitted, and we perceive no developing Kansas law indicating a movement toward permitting them. Tomlin's direct appeal was heard by this court. *McKay* was and remains controlling precedent. This court was duty bound to follow *McKay*, absent some indication the Supreme Court is departing from its position announced in that case. See *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). To demonstrate the prejudice required to establish a claim for relief based upon ineffective appellate counsel, Tomlin would have us speculate whether our Supreme Court would have sustained a petition for review of the Court of Appeals decision adhering to *McKay*, and then whether our Supreme Court would have overturned *McKay* had it taken the case. There was no such speculation regarding changes of the law in *Laymon*. *McAdam* was "in the works" when Laymon's counsel submitted his brief on appeal. Appellate counsel was on notice

that his compatriot's argument before the Court of Appeals in *McAdam* could ultimately prevail, and it did. In Tomlin's case, on the other hand, he asks us to engage in multiple exercises in speculation to arrive at a conclusion of prejudice. This we are not prepared to do.

The trial court did not abuse its discretion in denying Tomlin relief on his claim of ineffective assistance of appellate counsel.

Affirmed.