ORDER AND JUDGMENT *
STEPHEN H. ANDERSON, Circuit Judge.
Appellant, the State of Kansas, through David R. McKune, the Warden of the Lansing Correctional Facility, and Paul Morrison, the Attorney General, appeals the grant of a writ of habeas corpus to appellee Edwin Tomlin, an inmate incarcerated at Lansing on state convictions. We reverse and remand.
BACKGROUND
On June 16, 1998, Tomlin was charged with one count of rape, in violation of Kan. Stat. Ann. § 21-3502(a)(2), and one count of aggravated indecent liberties with a minor, in violation of Kan. Stat. Ann. § 21-3504(a)(3)(A). Both counts involved Tomlin’s eleven-year-old stepdaughter.
Although the offense of rape was the subject of a separate count from the offense of aggravated indecent liberties with a child, jury instruction no. 10 stated as follows:
The offense of rape with which defendant is charged includes the lesser of *593 fense of aggravated indecent liberties with a child. You may find the defendant guilty of rape, or guilty of aggravated indecent liberties with a child, or not guilty. When there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only.
St. Tr. R. Vol. I. Thus, under count 1, the jury could find Tomlin guilty of rape, or guilty of the lesser included offense of aggravated indecent liberties, or not guilty.
During the jury’s deliberations, the jury sent to the court the following note:
We are hung 3 for Guilty to Count 1 3 for Not Guilty to Count 1 or 2 due to reasonable doubt
6 for Guilty to Lesser Charge of Count 1 and Guilty to Count 2 We reviewed the facts and your instructions. We have discussed how to “compromise” but we all feel very strongly that we must vote what we believe. Also we feel strongly about our Duty to reach a decision for this Trial.
To help us break our deadlocks — what can you say or do for us? We want to come to a decision.
Appellant’s App. at 145. In response, the court gave the jury an instruction under Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and told them to continue deliberations. Two hours later, while the jury was still deliberating, the defense moved for a mistrial. The court took the defense motion under advisement. Shortly thereafter, the jury sent out another note:
We have moved to 11 guilty to count 1 of the lesser aggravated indecent liberties and 1 not guilty to count 1 or 2 due to reasonable doubt.
We have all agreed to Not Guilty to count 1 Rape.
Since 3 pm today, we have made good progress. However the one has stated that since we haven’t convinced him of his reasonable doubt position that he will never change his mind.
We are at an impasse. Most of the jury feels further discussion will not change his mind.
Appellant’s App. at 146. At this point, the state also moved for a mistrial. The jury was called back into the courtroom and the foreman confirmed that the jury was in fact deadlocked. Based upon the jury’s inability to reach a unanimous verdict, the court declared a mistrial. A few days later, Tomlin filed a motion for judgment of acquittal, arguing that the jury’s second note amounted to an acquittal on the rape charge. The court denied Tomlin’s motion, holding that it was not clear to what extent the note represented simply a compromise vote in an effort to bring deliberations to a conclusion, as opposed to an actual verdict of acquittal.
Tomlin was subsequently retried and was convicted of both counts. He was sentenced to 334 months’ imprisonment for the rape charge and 51 months for the aggravated indecent liberties with a child charge, to run consecutively, for a total of 385 months.
I. State Proceedings
As indicated above, Tomlin’s counsel timely moved for a judgment of acquittal, which was denied both on state procedural grounds and based upon the trial court’s comment that it was unclear whether the jury had actually reached a verdict.
A. Direct Appeal to KCOA
Tomlin appealed his conviction in the second trial to the Kansas Court of Appeals (“KCOA”), arguing, inter alia, that *594 the court erred in granting a mistrial and denying his motion for a judgment of acquittal, thereby subjecting him to double jeopardy.
The KCOA ruled that the court did not abuse its discretion in granting a mistrial, inasmuch as Tomlin had himself moved for a mistrial and never objected to the state’s motion for a mistrial. The KCOA further held that “[djouble jeopardy did not prevent a subsequent trial because the first trial was terminated with Tomlin’s consent” and the jury in the first trial did not issue a verdict. Mem. Op. at 11, Appellant’s App. at 114.
B. Collateral Proceeding — Trial Court
Tomlin then filed a state collateral proceeding, in which he argued that he had received ineffective assistance of counsel in his first trial in that his trial counsel should have opposed a mistrial and moved the court to accept the jury’s note as a verdict of acquittal on the rape charge, that counsel erred in presenting his double jeopardy argument, and that appellate counsel erred in failing to argue that the jury in his first trial acquitted Tomlin of rape. The state trial court ruled: defense counsel did, in fact, ultimately request (at the hearing on the motion for judgment of acquittal) that the jury’s second note be deemed a verdict of acquittal. Furthermore, the court concluded, both in fact and in law, that the jury’s note did not constitute a verdict on the rape charge. The court accordingly found that Tomlin could establish neither deficient performance nor prejudice. The court also found, for essentially the same reasons, that Tomlin’s appellate counsel was not ineffective.
C. Collateral Appeal to KCOA
On appeal, the KCOA similarly denied relief. Tomlin v. State, 35 Kan.App.2d 398, 130 P.3d 1229 (2006). After noting that “the status of Kansas law was (and is) that Kansas does not recognize partial verdicts, and absent a verdict on all charges in conformity with K.S.A. 22-3421 a defendant can be retried following a mistrial due to a hung jury,” id. at 1234, the KCOA held that “[t]he performance of Tomlin’s trial counsel was not constitutionally deficient.” Id.[1] For essentially the same reasons, the court found that Tomlin’s appellate counsel was not ineffective.[2]
*595 II. Federal Proceedings
Tomlin then filed the instant federal habeas petition. The district court granted the habeas petition. Tomlin v. MeKune, 516 F.Supp.2d 1224 (D.Kan.2007). Its reasoning was as follows: The KCOA used a state law ground (the claimed prohibition on partial verdicts stated in State v. McKay, 217 Kan. 11, 535 P.2d 945 (1975)) to find, on the merits, that Tomlin’s counsel was not ineffective. However, in order to bar federal review of that decision, the state law ground, whether substantive or procedural, must be “‘firmly established and regularly followed.’ ” Tomlin, 516 F.Supp.2d at 1229 (quoting Lee v. Kemna, 534 U.S. 362, 376, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)). The federal district court concluded that “the prohibition on partial verdicts in Kansas is not an independent and adequate state ground,” because, prior to Tomlin’s habeas appeal, there was no Kansas case specifically prohibiting “the course of conduct Mr. Tomlin asserts his counsel should have taken— that counsel should have moved for a formal verdict where there was a unanimous decision known by the court before the jury was discharged.” Id., and because McKay has only been cited once for the pai’tial verdict proposition. Thus, the district court reasoned, the KCOA decision relied solely upon a state ground which is not regularly followed or firmly established, and therefore it cannot bar federal review of any constitutional issue presented.
The district court concluded that the federal constitutional question underlying Tomlin’s claim, which the KCOA did not address, was whether Tomlin’s counsel’s actions were reasonable or not “in light of the Fifth Amendment double jeopardy prohibition.” Id. at 1231. More specifically, the district court identified the constitutional question underlying the ineffectiveness claim as “whether there was a manifest necessity for a mistrial on the charge of rape.” Id. Because the KCOA did not address that issue, the district court reviewed it de novo.
The district court first determined that Tomlin’s counsel’s consent to the mistrial on the rape charge, and his failure to move to publish the claimed verdict of “not guilty” on the rape charge, were not strategic choices, but rather “an oversight or ignorance of the law during trial.” Id. at 1233. The district court explained its ruling as follows:
To determine whether there is a manifest necessity, ... a court must take all circumstances into consideration. The issue here is when a jury is deadlocked as to one offense in a count, but not the other, is there a manifest necessity for a *596 mistrial of the offense on which agreement has been reached.
The KCOA essentially held that because there was not a unanimous agreement as to every charge in an offense, no verdict was possible. This is not the view of the Supreme Court in its double jeopardy case law.
Id. at 1235. Citing Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the court concluded that “Green indicates that where an appeal is taken, a defendant cannot be prosecuted for the greater offense for which he was already acquitted in the conviction of the lesser included offense.” Id. at 1236. Thus, “Tomlin should not have been forced to undergo another trial and give the prosecution a second bite at the apple when the jury, conclusively agreed the state did not prove that charge [i.e. the rape charge] beyond a reasonable doubt in his first trial, and there was, therefore, no manifest necessity for a mistrial.” Id. at 1237. The federal district court accordingly concluded that, under the first prong of ineffectiveness of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), “it was objectively unreasonable for counsel to consent to the mistrial and not move to publish the verdict.” Id.
Out of an abundance of caution, the district court also evaluated the KCOA decision under the deferential standard mandated by the Anti-Terrorism and Effective Death Penalty Act (“AEDPA”)[3] and concluded “in the alternative to its de novo review holdings, that Strickland was applied unreasonably in light of other Supreme Court precedent, and the state court was unreasonable in refusing to extend the double jeopardy prohibition in this context.” Id. at 1238. Finally, reviewing the issue de novo because the KCOA never reached the issue, the federal district court concluded that Tomlin had been prejudiced by his counsel’s ineffectiveness. As a result, the court determined that it need not address the ineffectiveness of appellate counsel.
The state appeals the district court’s grant of Tomlin’s habeas petition, arguing: (1) the district court failed to correctly apply the deferential standard of review of the AEDPA and, instead, “supplanted the state court’s adjudication of the merits of [Tomlin’s] claim with its own determination based on its own independent, and flawed, review”; (2) in its alternative deferential review under AEDPA, the district court “proceeded from a flawed premise, through an erroneous analysis, to an incorrect conclusion”; (3) and “the failure of [Tomlin’s] counsel to move for a partial verdict not recognized under state law and not mandated by federal constitutional law was not objectively unreasonable.” Appellant’s Br. at 12-15.
DISCUSSION
In an appeal from the grant or denial of a federal habeas petition, we review a district court’s findings of fact for clear error and its conclusions of law de novo. Robinson v. Golder, 443 F.3d 718, 720 (10th Cir.2006). Our review in this case is further limited: where an underlying state court addressed the merits of a habeas petitioner’s claims, we apply the deferential standard of review contained in the AEDPA. Under that standard, Tomlin may only obtain habeas relief if the KCOA’s decision was “contrary to, or involved an unreasonable application of, clearly established Federal law,” or is *597 “based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d); see also Brown v. Sirmons, 515 F.3d 1072, 1077 (10th Cir.2008), cert. denied, — U.S.-, 129 S.Ct. 403, 172 L.Ed.2d 294 (2008). “We must presume that the state court’s factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence.” Wilson v. Sirmons, 536 F.3d 1064, 1073 (10th Cir.2008). With respect to the district court, “if the district court’s factual findings are entirely dependent on the state court record, our review of those findings is de novo.” Id. at 1074. “If the state court did not decide the claim on the merits, the stringent principles of deference under 28 U.S.C. § 2254 are inapplicable.” Id.
As indicated above, the AEDPA “requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state court conviction became final.” Williams v. Taylor, 529 U.S. 362, 380, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). We have recently reiterated that “[wjhether the law is clearly established is the threshold question under § 2254(d)(1).” House v. Hatch, 527 F.3d 1010, 1015 (10th Cir.2008). Clearly established law, in turn, “is determined by the United States Supreme Court, and refers to the Court’s ‘holdings, as opposed to the dicta.’” Id. (quoting Lockyer v. Andrade, 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). Moreover, “clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice.” Id. at 1016.
Finally, with respect to state law determinations, the Supreme Court has stated, “[w]e have repeatedly held that a state court’s interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.” Bradshaw v. Richey, 546 U.S. 74,126 S.Ct. 602, 604,163 L.Ed.2d 407 (2005); see also Johnson v. Mullin, 505 F.3d 1128, 1141-42 (10th Cir. 2007) (noting that “ ‘it is not the province of a federal habeas court to reexamine state court determinations on state-law questions’ ”) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)), cert. denied, — U.S. -, 128 S.Ct. 2933, 171 L.Ed.2d 864 (2008).
This case really presents two interrelated questions arising out of the same set of circumstances: (1) Whether counsel was ineffective for not challenging Kansas law on the issue of what constitutes a verdict under that law, and (2) whether the state courts, from the perspective of a de novo review, violated federal constitutional principles of double jeopardy law or, from the perspective of AEDPA’s deferential review, objectively unreasonably applied clearly established principles of federal double jeopardy law. We answer both questions in the negative.[4]
It is clear in this case that the KCOA, the last state court to rule upon Tomlin’s case, found that Tomlin’s counsel was not ineffective because, in the court’s view, Kansas law prohibited partial verdicts. *598 Thus, the trial court could not have accepted a guilty verdict on the rape charge, without receiving verdicts on the other lesser included counts. In so ruling, the KCOA relied upon State v. McKay, 217 Kan. 11, 535 P.2d 945 (1975).
In McKay, the defendant was tried twice on a murder charge. At the conclusion of the first trial, the jurors were unable to agree on a verdict and a mistrial was declared. After the jury was discharged, it was revealed through affidavits of six of the jurors that “during deliberations the jurors ‘determined that the defendant was not guilty of murder in the second degree.’ ” Id. at 946. The second trial resulted in a conviction for voluntary manslaughter. The defendant argued that, since six of the jurors in the first trial swore that the jury had determined he was not guilty of second-degree murder, it was a violation of his double jeopardy rights to be placed again on trial for second-degree murder.
The Kansas Supreme Court rejected this argument. As noted above, n. 2, it quoted approvingly from a California case as follows:
... [W]e apprehend that in the trial of an offense which necessarily includes a lesser offense, as was the case here, the jury, before they can return a verdict, must, on the one hand, agree that the defendant is guilty of the offense charged or any included offense or, on the other hand, agree that he is not guilty of any offense, whether the greater or the lesser.
Id. at 947 (quoting People v. Doolittle, 23 Cal.App.3d 14, 19, 99 Cal.Rptr. 810 (Cal. Ct.App.1972)). While there have not been many cases involving this particular issue, McKay has been cited and followed in two Kansas cases, and not disavowed in any. See Long v. Kansas, 141 P.3d 525 (Table) (Kan.Ct.App.2006) (unpublished) (per curiam); State v. Burns, 23 Kan.App.2d 352, 931 P.2d 1258, 1262 (1997), overruled on other grds., State v. Belcher, 269 Kan. 2, 4 P.3d 1137 (2000). And although Doolittle was disapproved by a subsequent California case, Stone v. Superior Ct. of San Diego County, 31 Cal.3d 503,183 Cal.Rptr. 647, 646 P.2d 809 (1982), no Kansas authority has disapproved McKay. Furthermore, McKay was recently described as following the majority rule on the issue of partial verdicts. See People v. Richardson, 184 P.3d 755, 763 (Colo.2008) (“Several other jurisdictions have addressed this issue and the majority has held that if a single charge includes multiple degrees of offenses, the trial court may not conduct a partial verdict inquiry as to the offenses included within the charge.”) (citing cases, including McKay ).[5]
Given the above description of McKay and its treatment, it seems odd that the federal district court declared it “not an independent and adequate state ground” so as to bar federal habeas review. Tomlin, 516 F.Supp.2d at 1229. More particularly, and more relevantly to our status as a habeas court reviewing a state court decision, we feel constrained by the Supreme Court’s admonition that “[w]e have repeatedly held that a state court’s interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.” Bradshaw, 126 S.Ct. at 604; see also Johnson, 505 F.3d at 1141— 42. We accordingly conclude that the federal district court erred in essentially disregarding the KCOA’s ruling on Kansas law regarding partial verdicts.
After declaring that Kansas law did not recognize partial verdicts, the KCOA then *599 determined that neither trial nor appellate counsel were ineffective. In so doing, the KCOA did not cite Strickland, but cited state cases which discussed and applied Strickland’s standards for an ineffective assistance of counsel claim. See, e.g., State v. Orr, 262 Kan. 312, 940 P.2d 42 (1997). The KCOA reasoned as follows:
Stripped to its essentials, Tomlin’s argument is as follows: Existing Kansas law does not permit a partial verdict. That law is based, at least in part, upon the language in a California case, Doolittle. That language in Doolittle was disavowed in a later opinion by the California Supreme Court in Stone. My lawyer moved for a mistrial before it was known that the jury apparently had resolved the rape charge in my favor. However, in the short period between the time my lawyer became aware of the second jury note and the court’s declaration of a mistrial, he should have realized that withdrawing my mistrial motion, opposing the State’s mistrial motion, and asking for a partial verdict on the rape charge would not have been a futility since the language in Doolittle relied upon by the Kansas Supreme Court in McKay was disavowed by the California Supreme Court in Stone; and the Kansas Supreme Court would, in all probability, reverse its ruling in McKay and sanction a partial verdict in my favor on the rape charge.
It would be laudable if trial counsel, when faced with an issue such as this, could, within the short time allotted, engage in the analysis of Kansas and California law that Tomlin suggests. In fact, it would be not only laudable but quite extraordinary. The Sixth Amendment does not set the bar for trial counsel’s performance so high.
Tomlin, 130 P.3d at 1234.
Since the KCOA addressed this issue of ineffectiveness on its merits, we apply
AEDPA deference. Given the KCOA’s determination that Kansas law does not recognize partial verdicts, and considering all the circumstances of this case, we conclude that the court’s analysis of the ineffective assistance of counsel is reasonable under Strickland standards. That is, since Kansas does not recognize partial verdicts, it was not objectively unreasonable for Tomlin’s trial counsel to fail to move for something not recognized under state law, nor was it unreasonable for his counsel to fail to advance an argument for changing Kansas law.
We note that the district court, in granting Tomlin’s habeas petition, took the view that the KCOA did not address the real constitutional issue underlying Tomlin’s ineffectiveness claim, which the court identified as “whether there was a manifest necessity for a mistrial on the charge of rape.” Tomlin, 516 F.Supp.2d at 1231. The KCOA had concluded that, because there was not a unanimous agreement on all charges, but rather only a partial verdict not recognized under Kansas law, no verdict was possible. And because there was no verdict, the jury was essentially deadlocked and there was a manifest necessity for a mistrial, with the result that a later retrial was not barred by double jeopardy. See Illinois v. Somerville, 410 U.S. 458, 459, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) (holding that since “the mistrial met the ‘manifest necessity* requirement of our cases, ... the Double Jeopardy Clause of the Fifth Amendment ... did not bar retrial under a valid indictment.”); cf. Price v. Vincent, 538 U.S. 634, 642, 123 S.Ct. 1848,155 L.Ed.2d 877 (2003).
The district court, on the other hand, viewed Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), as providing the basis for the federal consti *600 tutional principle that a court must accept a verdict of partially not-guilty, with the result that there is a verdict which bars later retrial, and there is no manifest necessity for a mistrial. However, we do not view Green as establishing that principle.
In Green, the defendant had been indicted for first-degree murder and the trial court instructed the jury that it could convict him of either first-degree murder or of the lesser included offense of second-degree murder. The jury convicted the defendant of second-degree murder, but was silent on first-degree murder. The second-degree murder conviction was overturned, however, on appeal. The Supreme Court held that a retrial on the first-degree murder charge was barred by the double jeopardy clause because “the jury’s verdict [of guilt on the second-degree charge] [w]as an implicit acquittal on the charge of first degree murder.” Id. at 190, 78 S.Ct. 221.
The district court acknowledged that Green was distinguishable from the instant case “because the jury was not hung on the lesser included offense as it was in Mr. Tomlin’s case,” Tomlin, 516 F.Supp.2d at 1235. Unlike the district court, however, we think that is a significant distinction. An affirmative conviction on one part of a charge can very well be viewed as an implicit acquittal on another part of the charge, but a deadlocked jury on one part does not suggest, in general, an implicit verdict on another, particularly where, as here, there is no way of knowing whether the jury’s note indicated merely a compromise or not.[6] The Supreme Court’s language in Green is instructive: “the great majority of cases in this country have regarded the jury’s verdict as an implicit acquittal on the charge of first degree murder.” Green, 355 U.S. at 190, 78 S.Ct. 221 (emphasis added). The Court did not state that a non-verdict on one part can be regarded as an implicit acquittal.
At most, the jury’s note suggests that the jury was tending toward agreement on a finding of not guilty on the rape charge of count 1, and a finding of guilt on the lesser included offense of aggravated indecent liberties. What seems most clear, however, is that the jury was simply still deliberating on count 1 and was unable to come to a final decision.
To be sure, it is easier to draw this conclusion because the two offenses are contained within one count. The district court, as well as Tomlin, relied upon the following passage from G'reen to argue that it makes no difference that the jury was looking at a greater and lesser included offense within a single count:
In substance the situation was the same as though Green had been charged with these different offenses in separate but alternative counts of the indictment. The constitutional issues at stake here should not turn on the fact that both offenses were charged to the jury under one count.
Green, 355 U.S. at 190 n. 10, 78 S.Ct. 221. They suggest that this indicates that federal law compels the acceptance of partial verdicts regardless of whether the partial verdict comes from within a single count or separate counts. Nonetheless, as Tomlin acknowledged, that language in Green *601 was dicta. On habeas review, clearly established federal law “is determined by the United States Supreme Court, and refers to the Court’s holdings, as opposed to the dicta.” House, 527 F.3d at 1015 (further quotation omitted). Thus, we cannot say that Green clearly establishes that federal constitutional law compels the acceptance of partial verdicts in the circumstances of this case. And whether we look at this on a de novo basis to determine whether the Kansas courts violated federal double jeopardy principles in failing to grant Tomlin habeas relief, or examine the same question under AEDPA’s deferential review, or whether we view the case through the prism of counsels’ effectiveness for failing to argue the existence of such a principle under state or federal law, we conclude that the federal district court erred in granting Tomlin’s habeas petition.
CONCLUSION
For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.

 This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. Kan. Stat.App. § 22-3421 provides as follows:
The verdict shall be written, signed by the presiding juror and read by the clerk to the jury, and the inquiry made whether it is the jury’s verdict. If any juror disagrees, the jury must be sent out again; but if no disagreement is expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case. If the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged.

. The KCOA observed that the Kansas case cited for the prohibition of partial verdicts, State v. McKay, 217 Kan. 11, 535 P.2d 945 (1975), quoted with approval language from People v. Doolittle, 23 Cal.App.3d 14, 19-20, 99 Cal.Rptr. 810 (Cal.Ct.App. 1972), in which the court stated:
[I]n the trial of an offense which necessarily includes a lesser offense ... the jury, before they can return a verdict, must, on the one hand, agree that the defendant is guilty of the offense charged or any included offense or, on the other hand, agree that he is not guilty of any offense, whether the greater or the lesser.
Id. at 19-20, 99 Cal.Rptr. 810. Tomlin argued before the KCOA that the language relied upon in Doolittle was effectively disavowed in Stone v. Superior Ct. of San Diego County, 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809 (1982). Tomlin argued that that circumstance should have prompted Tomlin's trial counsel to withdraw his mistrial motion, oppose the state’s mistrial motion, and ask for a partial verdict on the rape charge, since it *595 suggests that the Kansas Supreme Court would probably reverse its ruling in McKay and sanction a partial verdict for Tomlin on the rape charge. The KCOA rejected this argument:
It would be laudable if trial counsel, when faced with an issue such as this, could, within the short time allotted, engage in the analysis of Kansas and California law that Tomlin suggests. In fact, it would be not only laudable but quite extraordinary. The Sixth Amendment does not set the bar for trial counsel's performance so high.
Tomlin, 130 P.3d at 1234. The court further explained:
Here, Tomlin’s criticism is based on counsel’s failure to anticipate a change in the law which has yet to occur and, in fact, may never occur. To meet the reasonableness standard for effective assistance, trial counsel need not be prescient or omniscient. We hold Kansas lawyers to an understanding of Kansas law, not California law. While the growth of the law is dependent upon creative lawyers advancing new theories, failure to do so does not render a lawyer’s performance constitutionally deficient.

Id.

. As we discuss, infra, where a state court has addressed a federal issue on the merits, a federal court on habeas review must, pursuant to the AEDPA, apply a deferential standard of review.

. The federal district court introduced some confusion in this case by inquiring whether the state law concerning partial verdicts was an adequate and independent basis for the state courts’ ruling. That goes to whether an issue is procedurally barred in state court, and therefore barred in federal court on habeas review. See Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The issue of the adequacy of the verdict in this case was not procedurally barred — the issue was whether it was properly decided on its merits.

. While it is true that, in McKay, the jury was discharged before the jury's claimed verdict on another charge was revealed, and that differentiates McKay from our case, we do not see how that factual difference undermines or alters the principle as to partial verdicts.

. The state trial court denied Tomlin's motion for an acquittal, or alternatively, his motion for the court to approve a de facto verdict, stating, "I don't know to what extent that— the verdict that was given to us was a compromise between those who thought he was guilty on everything versus those who didn’t want to convict on anything.” Appellant's App. at 120. We view this as a factual finding by the state trial court, to which we owe deference. See Wilson, 536 F.3d at 1070-71 ("The factual findings of the [state appellate court] are presumed correct unless rebutted by clear and convincing evidence.”).